# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 15, 2015          Decided June 12, 2015

No. 13-7156

RANDY BROWN,
APPELLANT

v.

WHOLE FOODS MARKET GROUP, INC.,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00175)

*Andrew D. Herman* argued the cause for the amicus curiae in support of the appellant. *Anthony F. Shelley*, appointed by the court, was with him on briefs.

*Christopher E. Humber* argued the cause and filed brief for the appellee.

Before: HENDERSON and MILLETT, *Circuit Judge*s, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

PER CURIAM:   *Pro se* plaintiff Randy Brown suffers from a cognitive disability due to traumatic brain injury.   His impairment causes twitching, abnormal or "quirky" facial expressions, "social awkwardness" and "idiosyncratic mannerisms."   Compl. 1; Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 4.   It also renders him susceptible to confusion and, when he experiences stress, it can incapacitate him with little warning. Brown enjoys imported food and wine and often shops at the Whole Foods supermarket in Washington, D.C.'s Foggy Bottom area.   Brown alleges, however, that Whole Foods employees repeatedly mistreated him and eventually orchestrated his false arrest for theft and trespassing.   He sued Whole Foods, claiming that its mistreatment amounted to discrimination based on his disability and his race.   The district court dismissed his suit and, for the reasons set forth below, we reverse and remand.

**I.**

Whole Foods's alleged mistreatment of Brown first began in late summer 2011 when a cashier asked Brown:   "Wouldn't your food stamps buy more at a less expensive store?" Amend. to Pl.'s Compl. ¶ 1.[1]   Brown insisted that he did not use food stamps but the cashier responded (loud enough for others to hear) that she had seen him use food stamps and then mocked him for doing so.   Brown claims she mistook him for a different black male, thus profiling him because of his race. He reported the incident to Whole Foods management and the cashier was reassigned to stocking shelves.   Nevertheless, the

---

[1]   Because we review the district court's dismissal of Brown's claims, we recount the facts as laid out in his pleadings, viewing them in the light most favorable to Brown.   *See Klay v. Panetta*, 758 F.3d 369, 371 (D.C. Cir. 2014).

cashier-turned-shelf-stocker continued to display "open resentment and hostility" toward him. *Id.* ¶ 2.

In January 2012, while in the Whole Foods deli section, Brown asked to sample an expensive salami. The Whole Foods employee refused, allegedly assuming that Brown could not afford to buy it and informing him that samples were only for customers intending to make a purchase. Brown insisted and, rather than offering him the salami on a napkin (as she did with other customers), she allegedly removed her gloves, grabbed a discarded slice with her bare hands and shoved it towards Brown. When Brown refused the sample, she accused Brown of "thinking that he was too good to eat something from her bare hands" and left the deli section to speak with a Whole Foods wine-department employee. *Id.* ¶ 6. Brown overheard the two employees referring to him as "simple looking" and "trifling" and remarking that he "should be grateful for anything he received." Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 6.[2]

The day after the deli incident, Brown returned to Whole Foods. The wine-department employee who had earlier mocked him accused him of stealing olives and shouted: "You're not to eat anything in this store!" *Id.* ¶ 7. Brown indicated that he was not eating anything, which prompted an apology and, according to Brown, a false explanation that the employee was merely concerned because "toxic dust" could make him sick. *Id.* Brown continued shopping, eventually asking a wine-department supervisor for a recommendation.

---

[2] Brown also alleges, however, that another Whole Foods employee "put on gloves and provided the sample that [he] had, originally, requested[,] served on a napkin." Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 6.

According to Brown, the supervisor stared at him and "was reluctant to speak to [him] about wines." *Id.* ¶ 9.

Frustrated, Brown met with "Ashley," the supervisor of the deli and wine departments. *Id.* ¶¶ 10–11. He explained his disability and that Whole Foods employees' harassment aggravated his confusion and disorientation. Ashley apologized and assured him that the store's employees would be reprimanded for violating Whole Foods's non-discrimination policy. Brown then asked whether Whole Foods "would accommodate him by allowing him to speak with management if a problem arose in the future." *Id.* ¶ 14. Ashley assured him that he could speak with a manager if he felt mistreated or harassed and promised to document their conversation. Subsequently, Brown asked Ashley to make Whole Foods management "understand" his disability and "discourage employees from profiling and targeting him." *Id.* ¶ 15. According to Brown, Ashley "took notes and promised that WholeFoods [sic] would take the matter seriously." *Id.* ¶ 16.

On February 4, 2012, Brown, wearing a foot cast and using a cane due to a bicycle accident, was walking through Whole Foods with an armful of groceries when he noticed a Whole Foods employee named "Khalil" taking photos of him. *Id.* ¶¶ 17, 19. Khalil confronted Brown, accused him of stealing a cookie, advised him to "flee the store" before the police arrived and suggested that he "never return." Amend. to Pl.'s Compl. ¶ 9. Brown told Khalil that he wanted to speak with a manager; Khalil responded, "I am the manager." Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 21. Brown panicked and was unable to respond. When the police arrived, Khalil allegedly said, "We don't want this guy in our store. He stole a package of cookies and walked through the entire store eating them. He has been here over an hour." *Id.* ¶ 22.

Brown was arrested for theft and trespassing but ultimately charged with trespassing only. He retained a lawyer and the trespassing charge was eventually dismissed when Whole Foods failed to appear for trial. Brown's lawyer then suggested that he sue Whole Foods but told Brown to take no legal action on his own. His lawyer filed a one-page complaint in the Superior Court, alleging that Brown had been falsely arrested. According to Brown, his lawyer declined to allege race or disability discrimination, advising Brown that Whole Foods was not subject to civil-rights statutes, that he had in fact trespassed by not leaving Whole Foods when asked and that Whole Foods could file a retaliatory suit against both Brown and the lawyer for "impugning" its reputation if a civil-rights complaint were brought. Add. to Pl.'s Resp. to Def.'s Mot. to Dismiss 2.

Dissatisfied, Brown filed a *pro se* complaint in district court under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, "pertaining to [Whole Foods's] refusal to accommodate" him. Compl. 1. His complaint recounted his experiences with Whole Foods employees and alleged that he had "asked that management be aware that [he] was susceptible to confusion in complicated situations involving the type of harassment that [he] had already experienced at WholeFoods [sic]." *Id*. at 2. It further alleged that Brown had "asked for an accommodation that would allow [him] to receive help from a man[a]ger in order to prevent future problems." *Id.* Whole Foods moved to dismiss Brown's complaint, acknowledging Brown's allegation that he had requested access to a manager but also noting that he did not allege that he had been "denied such a request." Mem. in Supp. of Def.'s Mot. to Dismiss 4.

In his opposition to Whole Foods's motion, Brown alleged that he had requested Whole Foods management to

"understand his disability and discourage employees from profiling and targeting him." Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 15. According to Brown, he "felt bewildered" because "Ashley had assured [him] that WholeFoods [sic] would accommodate him by allowing him to speak with a manager" but "Khalil's actions contradicted what Ashley had promised." *Id*. ¶ 21.

Brown also filed an "Amendment" to his original complaint that, for the first time, alleged that Whole Foods violated Title II[3] of the Civil Rights Act of 1964 (CRA), 42 U.S.C. §§ 2000a *et seq*. In support, Brown recounted the food-stamp accusation and noted that he had been subject to "similar remarks indicating a pattern of [racial] profiling." Amend. to Pl.'s Compl. ¶ 3; *see also id.* ¶ 7. Whole Foods responded with a second motion to dismiss, arguing that Brown's failure to comply with the CRA notice requirement[4] ousted the court of jurisdiction. Whole Foods further argued that the jurisdictional deficiency could not be cured because the statute of limitations for filing a discrimination complaint with the District of Columbia Office of Human Rights (DCOHR) had long since expired.

Brown moved for an extension of time to respond, attaching a copy of an email from the DCOHR General Counsel. The email responded to Brown's earlier email that appeared to be a post-complaint attempt to comply with the CRA notice provision. A few weeks later, Brown responded to Whole Foods's second motion to dismiss, conceding his

---

[3] Brown's complaint mistakenly alleged a violation of Title *III* of the CRA but the district court assumed that he meant Title *II*, which bars racial discrimination by "any place of public accommodation." *See* Mem. Op. 7 (quoting 42 U.S.C. § 2000a(a)).

[4] *See infra* p. 12.

noncompliance with the CRA notice requirement and the one-year statute of limitations but arguing for an equitable exception because his former lawyer had "misadvis[ed]" him. Pl.'s Resp. to Def.'s 2d Mot. to Dismiss 7.

On September 4, 2013, the district court dismissed—without prejudice—both of Brown's claims. On his ADA claim, the court first assumed that Brown intended to allege a violation of 42 U.S.C. § 12182(b)(2)(A)(ii), which prohibits a place of "public accommodation" from failing "to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford" the ADA-covered entity's "goods, services, facilities, . . . or accommodations to individuals with disabilities." *See* Mem. Op. 6. The court then found that "Brown's only requested accommodation was that he 'receive help from a manager in order to prevent future problems.' " *Id.* (quoting Compl. 2). According to the court, Brown "never claim[ed] that he ever sought to make good on this request or that Whole Foods ever denied it." *Id.* Without addressing Brown's allegations—asserted in his opposition to Whole Foods's motion to dismiss—that he did in fact request managerial assistance on the day of his arrest and asked that Whole Foods management understand his disability and discourage its employees from harassing him, the district court dismissed his ADA claim.

On his CRA claim, the district court first held that Whole Foods fit the statutory definition of a "place of public accommodation," 42 U.S.C. § 2000a(b)(1)–(3), but, concluding that "[t]he notice provision in Title II is a mandatory jurisdictional prerequisite," Mem. Op. 8 (quotation marks omitted), it decided that Brown's admitted failure to comply divested it of subject-matter jurisdiction. *Id.* at 9. It further observed that it was "too late for Brown to cure the

deficiency in his claim by filing such a notice" because race discrimination "[c]omplaints must be filed with DCOHR 'within 1 year of the occurrence of the unlawful discriminatory practice, or the discovery thereof,' " *id.* at 9–10 (quoting D.C. Code § 2-1403.04(a)), and "Brown allege[d] that the last incident of discrimination occurred on February 4, 2012, well over one year" earlier, *id.* at 10. Without addressing Brown's post-complaint attempt to comply with the notice provision, the district court also dismissed his CRA claim.

Brown timely appealed; we subsequently appointed *amicus curiae* to "present arguments in favor of [Brown's] position." Order Appointing *Amicus Curiae* 2 (Apr. 23, 2014). We also notified Brown to "file a brief or file a notice stating that he is joining in the brief of amicus curiae" or his appeal would be dismissed for lack of prosecution. *Id.* Before *amicus* filed its brief, Brown filed a notice indicating that he "intend[ed] to join in the brief of Amicus Curiae" and would "not file a brief" of his own. Appellant's Notice Regarding Intent to Join Br. of *Amicus Curiae* 2.

## II.

We review *de novo* the district court's dismissal of Brown's complaint for failure to state a claim (his ADA claim) and for lack of subject-matter jurisdiction (his CRA claim). *Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (failure to state a claim); *Oakey v. U.S. Airways Pilots Disability Income Plan*, 723 F.3d 227, 231 (D.C. Cir. 2013) (subject-matter jurisdiction). In so doing, we treat "the complaint's factual allegations as true" and we grant Brown "the benefit of all inferences that can be derived from the facts alleged." *Atherton,* 567 F.3d at 677. Although we hold Brown's *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551

U.S. 89, 94 (2007) (per curiam), Brown must nonetheless plead "factual matter that permits [us] to infer more than the mere possibility of misconduct," *Atherton*, 567 F.3d at 681–82 (quotation marks omitted).

## A.

Brown first alleges a violation of Title II of the ADA, specifically section 12182(a). To state a claim under the ADA, Brown must plausibly allege that he is disabled within the meaning of the ADA; that Whole Foods is a place of public accommodation; and that Whole Foods discriminated against him by denying him a full and equal opportunity to enjoy the goods and services it provides. *See Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). The district court assumed[5] that Brown satisfied the first and second elements but concluded that he failed to show discrimination.

ADA-prohibited discrimination can take many forms, some of which are enumerated in the statute. The district court presumed that Brown's claim fit under 42 U.S.C. § 12182(b)(2)(A)(ii).[6] After noting that "Brown's only requested accommodation was that he 'receive help from a

---

[5] The court declared: "Even assuming that Brown is disabled and that Whole Foods is a public accommodation within the meaning of the ADA, . . . his Complaint still fails to state a cause of action for which relief can be granted." Mem. Op. 6 (citation omitted).

[6] Again, it declared: "[T]he Court will presume that Brown intends to allege discrimination consisting of 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.'" Mem. Op. 6 (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)).

manager in order to prevent future problems,' " Mem. Op. 6 (quoting Compl. 2), the court dismissed Brown's ADA claim because "Brown never claims that he ever sought to make good on this request or that Whole Foods ever denied it." *Id*.

On appeal, *amicus* argues that Brown did in fact plausibly so allege. *Amicus* Br. 16; *see also id.* at 20. *Amicus* insists that Brown "made two, specific requests for reasonable modification[s], neither of which were granted by Whole Foods," *Amicus* Reply Br. 8; specifically, that Whole Foods management instruct its employees to "cease harassing Brown" and that Whole Foods "provide him with access to a supervisor capable of addressing his needs." *Amicus* Br. 25; *see also Amicus* Reply Br. 8–9, 11–12. Whole Foods responds that Brown was never denied an opportunity to speak with a manager and that his pleadings do not indicate that he asked Whole Foods to modify its policies to account for his disability. Whole Foods argues that, "[i]f anything, Brown is simply attempting to shoehorn a disparate treatment claim into the framework of a reasonable accommodation claim" but that the district court "did not construe Brown's pleadings to include a disparate treatment claim . . . and Brown does not argue on appeal that it should have done so." Appellee's Br. 11.

We conclude that Brown's pleadings—considered *in toto*—set out allegations sufficient to survive dismissal. Specifically, Brown allegedly asked that management be made aware of his disability, *see* Compl. 2; Pl.'s Resp. to Def.'s Mot. to Dismiss ¶¶ 14–15; that he be allowed to receive help and speak to a manager to prevent future problems, *see* Compl. 2; Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 14; and that management discourage employees from profiling and targeting him, Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 15. Brown was then allegedly denied these accommodations when

he asked for a manager on the day of his arrest. *See id.* ¶ 21. Although Khalil responded that *he* was the manager, Brown was "bewildered" because "Khalil's actions contradicted what Ashley had promised," *id.*, that is, "that management [would] be aware that [he] was susceptible to confusion" and would provide "help . . . in order to prevent future problems." Compl. 2. It appears that the district court did not consider these allegations. Brown also alleged that he requested Whole Foods management more generally to "understand his disability and discourage employees from profiling and targeting him." Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 15. The district court did not expressly rule on this request.

We conclude that Brown, as a *pro se* plaintiff, successfully "nudged [his] claim[] across the line from conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and, because the district court did not appear to consider all of his allegations—including those in Brown's opposition to Whole Foods's motion to dismiss—in concluding otherwise, we reverse and remand the dismissal of Brown's ADA claim. We have previously held that a district court errs in failing to consider a *pro se* litigant's complaint "in light of" all filings, including filings responsive to a motion to dismiss. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). Whole Foods will suffer no prejudice by allowing Brown to, in effect, supplement his complaint with the allegations included in his opposition. *See id.* at 549. Indeed, when Brown filed his opposition, he also filed a separate amendment to his complaint, which amendment the district court allowed. In reversing the district court's dismissal order, we hold that the district court should have considered the facts alleged in *all* of Brown's pleadings and, once considered, should have concluded that Brown sufficiently stated his ADA claim to avoid 12(b)(6) dismissal.

**B.**

Brown also alleged that Whole Foods violated Title II of the CRA, which ensures that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion or national origin." 42 U.S.C. § 2000a(a). The CRA provides that, if an "alleged act or practice prohibited by this subchapter . . . occurs in a State" with a "State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice;"

> *[N]o civil action may be brought* . . . before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

*Id.* § 2000a–3(c) (emphasis added). The CRA notice provision applies to claims arising in the District of Columbia[7] and Brown did not first seek relief from DCOHR.[8]

---

[7] *See* D.C. Code § 2-1402.31(a)(1) (unlawful "[t]o deny [on the basis of race], directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations"); *id.* §§ 2-1403.01–.17 (DCOHR has authority to seek relief for violations of D.C. Code § 2-1402.31).

[8] *Amicus* raised the possibility that Brown gave verbal notice to the D.C. Office of Disability Rights—not DCOHR—before he

Construing the CRA notice provision as a "mandatory jurisdictional prerequisite," Mem. Op. 8 (quotation marks omitted), the district court held that it was without subject-matter jurisdiction and that it was too late for Brown to meet the CRA notice requirement, *id.* at 9.

*Amicus* argues that the CRA notice provision is not a jurisdictional prerequisite under the U.S. Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), and its progeny and that Brown sent a post-complaint email to DCOHR; accordingly, *amicus* argues, Brown's failure to comply strictly with the CRA notice provision should be excused on equitable grounds. Whole Foods defends the district court's decision *in toto*, noting that several of our sister circuits—all pre-*Arbaugh*—have construed the CRA notice requirement as jurisdictional. Whole Foods is wrong. Under Supreme Court cases like *Arbaugh*, 546 U.S. at 500, *Gonzalez v. Thaler*, 132 S. Ct. 641 (2012), *Sebelius v. Auburn Regional Medical Center*, 133 S. Ct. 817 (2013), and *United States v. Wong*, 135 S. Ct. 1625 (2015), jurisdiction means a court's "statutory or constitutional *power* to adjudicate the case," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis in original), and statutory limitations like the CRA notice provision are jurisdictional only when the Congress has "clearly stated as much," *Wong*, 135 S. Ct. at 1632 (notice requirement and time limits in Federal Tort Claims Act are not jurisdictional) (alterations and quotation marks omitted). The Congress has not so treated the CRA notice requirement and we take this opportunity to make clear that section 2000a–3(c) of the CRA does not constitute a jurisdictional prerequisite.

---

filed his complaint. *Amicus* concedes, however, that there is no record support therefor.

Brown's attempt to comply with the notice provision, the district court concluded, came "too late." Mem. Op. 9. We disagree. In *Oscar Mayer & Co. v. Evans*, 441 U.S. 750 (1979), the Supreme Court construed a materially similar notice provision contained in the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.* Section 14(b) of the ADEA provides, in relevant part, that:

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought . . . before the expiration of sixty days after proceedings have been commenced under the State law.

29 U.S.C. § 633(b). After holding that exhaustion of state administrative remedies is "mandatory, not optional," *Oscar Mayer*, 441 U.S. at 758, the Supreme Court nonetheless rejected the argument that, because the state statute of limitations at issue had expired, it was "too late . . . to remedy [the] procedural omission" and the "federal action [was] therefore jurisdictionally barred." *Id.* at 759. The argument failed because the state statute of limitations could not divest the federal court of jurisdiction "unless Congress mandated that resort to state proceedings must be within time limits specified by the State," *id.*, and "[b]y its terms," section 14(b) "requires only that state proceedings be *commenced* 60 days before federal litigation is instituted," *id.* (emphasis added). Indeed, "besides commencement[,] no other obligation is placed upon the ADEA grievant," particularly no obligation that "the grievant must file with the State within whatever time limits are specified by state law." *Id.* For this reason, the Court held that the plaintiff in *Oscar Mayer* "may yet comply

with" the ADEA's notice provision "by simply filing a signed complaint" with the appropriate state agency. *Id.* at 764. If that state agency dismissed the complaint as untimely, then, the Court held, he "may . . . return to federal court." *Id.* at 764–65. To give the *Oscar Mayer* plaintiff the opportunity to satisfy the ADEA's notice requirement, the Supreme Court ordered his suit held in abeyance. *Id.* at 764.

The same reasoning applies to Brown's CRA claim. The CRA notice requirement, by its terms, does not incorporate any state statute of limitations. *See* 42 U.S.C. § 2000a–3(c). For this reason, Brown may still comply with it by providing written notice of his race discrimination allegations to DCOHR and waiting thirty days. If DCOHR denies his administrative complaint as time-barred, he, like the *Oscar Mayer* plaintiff, can return to federal court at that time. Accordingly, we reverse the district court's dismissal and instruct it to hold Brown's CRA claim in abeyance until he complies with the CRA notice provision.

For the foregoing reasons, we reverse the district court's dismissal of Brown's ADA and CRA claims and remand for proceedings consistent with this opinion.

*So ordered.*