**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2033
_____

DAVID A. MILLER,
                              Appellant

v.

M. BRADY, in his official and individual capacities;
A. MANTZ, in his official and individual capacities;
C. BONNER, in his official and individual capacities;
D. QUINTERO, in his official and individual capacities;
F. LARKIN, in his official and individual capacities;
SEASIDE PARK BOROUGH

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-14-cv-04310)
District Judge:  Honorable Peter G. Sheridan

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 11, 2016
Before:  JORDAN, BARRY and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Filed: February 11, 2016)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

David Miller appeals pro se from the District Court's order dismissing his civil

rights complaint brought pursuant to 42 U.S.C. § 1983. For the reasons set forth below,

we will affirm in part and vacate in part the District Court's order, and remand the matter

for further proceedings.

Miller filed the complaint against four police officers in Seaside Park, New Jersey,

M. Brady, A. Mantz, C. Bonner, and D. Quintero, as well as Chief of Police, Frank

Larkin, and the Borough of Seaside Park, alleging that the defendants acted under color

of state law to deprive him of his First Amendment right to free speech, and to retaliate

against him for exercising his free speech rights.[1] Miller sued the defendants in their

official and individual capacities, and sought punitive and compensatory damages.

The action stems from Miller's display of a sign advertising his website alleging

government corruption in the Borough. The sign was attached to his truck, and the truck

was parked in front of his home "on the shoulder" of Route 35 in Seaside Park. In June

2010, Miller received notice from local officials that the display of the sign violated

Seaside Park Municipal Code § 25-624E, which prohibited "[t]he placement of any sign

on public property or within any public right-of-way . . . without approval by resolution

of the governing body." Miller continued to display the sign and failed to appear in

---

[1] To the extent that Miller sought to impose criminal liability on Defendants under 18
U.S.C. § 241, he lacked standing to proceed. See United States v. Friedland, 83 F.3d
1531, 1539 (3d Cir. 1996) ("[T]he United States Attorney is responsible for the
prosecution of all criminal cases within his or her district."). We construe the complaint,

2

Seaside Park Municipal Court in response to the ensuing summonses. A warrant was issued for his arrest for failure to appear.

On January 21, 2012, Defendant Brady arrested Miller pursuant to the warrant. The matter was transferred to the Monmouth Beach Municipal Court, which upheld the violation and imposed a fine. Miller continued to display his sign and received a second notice of violation of § 25-624E. He again disregarded multiple summonses, and failed to pay the fine; as a result, his driver's license was suspended on August 31, 2012. On September 1, 2012, Defendants Brady and Mantz observed Miller driving in Seaside Park when he failed to yield the right of way to a group of pedestrians crossing Route 35. The officers attempted to initiate a motor vehicle stop, but Miller continued to drive for three-quarters of a mile, and then parked in front of his home. During the course of their pursuit, the officers observed Miller making numerous motor vehicle violations. Miller was arrested and charged with 18 motor vehicle violations; he was subsequently convicted on 13 of the charges.

On September 4, 2012, Miller was arrested by Defendant Bonner for driving while his license was suspended. Bonner reported that Miller became enraged during the course of the arrest; he also reported that Miller made "paranoiac statements" and was "irrational" and acting "inconsistent with his normal behavior." Bonner contacted the Psychiatric Emergency Screening Services Unit (PESS) and informed it of his observations. The Unit sent a psychiatric screener to the police station to evaluate Miller;

---

as did the District Court, as alleging civil rights claims under § 1983.

the screener concluded that Miller should be transported to the hospital for further evaluation. Miller was released from the Community Medical Center on September 5, 2012, following a psychiatric evaluation.

On November 29, 2013, Miller was arrested by Defendant Brady pursuant to a warrant for his arrest, issued after his failure to appear in Municipal Court on the charge of driving with a suspended license. In March 2014, Miller was found guilty of this charge. Subsequently, on March 11, 2014, Miller was arrested by Defendant Quintero for driving with a suspended license. According to Miller, he then paid a fine to have his driver's license restored, but he was subsequently arrested by Defendant Bonner on May 7, 2014, and charged with "contempt of court for driving."[2]

In his complaint, Miller alleged that the code violations were an attempt to suppress his right to free speech and that his arrests were an attempt to retaliate against him for exercising that right. He further alleged that Bonner knowingly submitted a false report resulting in his psychiatric detention in an effort to suppress his right to free speech. After an oral hearing on defendants' motions to dismiss, the District Court dismissed the complaint with prejudice as to all defendants for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). This appeal ensued.

---

[2] As with the September 1, 2012, incident, Miller did not initially stop when the officers attempted to pull his truck over on November 29, 2013, and March 11, 2014. Rather, he drove to his home nearby and was then arrested. As a consequence, he was convicted on January 8, 2015, of three counts of eluding law enforcement officers and/or failing to stop. He was sentenced to 90 days of imprisonment and his driver's license was suspended for two years.

4

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the dismissal. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). To survive dismissal, a complaint must "state a claim to relief that is plausible on its face" by including facts which "permit the court to infer more than the mere possibility of misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

Miller first argues on appeal that the District Court erred in determining that he did not challenge the constitutionality of § 25-624E. In his complaint, Miller cited Hague v. Committee for Industrial Organization, 307 U.S. 496, 515-516 (1939), in which the Supreme Court held that municipalities cannot completely abridge First Amendment activity from their open streets, sidewalks, and parks. However, the crux of his argument was that his specific actions did not actually violate the ordinance. He maintained that his truck was "legally parked" and that the "shoulder of the road in front of his house . . . was neither the public property or right-of-way" noted in the Code. Compl. at ¶ 19. The complaint further alleged that the Borough "attempt[ed] to suppress free speech that was directed toward the exposure of local corruption" and that it issued the violation notices "because he exercised his constitutionally protected right to free speech." Compl. at ¶¶ 22 & 136. Moreover, in his reply to the motions to dismiss, Miller maintained that the Borough's "interpretation" of the code provision was "blatantly unconstitutional" and that other vehicles "routinely and legally park on the shoulder of the street within Seaside Park." See Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (holding that a court must "consider a pro se litigant's complaint 'in light of' all filings,

including filings responsive to a motion to dismiss."). In light of the persistent focus of Miller's pleadings, we do not think the District Court was required to read the complaint as making a facial challenge to the ordinance; rather, we understand these arguments to amount to a challenge to § 25-624E "as applied" to Miller. The essence of his claim is that the Borough discriminatorily enforced the ordinance against him based on the content of his signs in violation of his First Amendment rights. See Members of City Council of City of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 804 (1984) (recognizing that an ordinance may be invalid under the First Amendment if "applied to [a party] because of the views that they express"); see also Brown v. City of Pittsburgh, 586 F.3d 263, 289 (3d Cir. 2009) ("Even to the extent that the Ordinance is facially valid, it may be unlawful as applied."). The District Court erred in failing to address this cognizable claim for relief against the Borough.

The District Court properly dismissed the retaliation claims, however. Miller failed to sufficiently plead a causal connection between his exercise of free speech and any retaliatory conduct by the police officers. See Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Miller's facts in support of his claims – i.e., that defendants were aware of the contents of his signs, that the office of the Seaside Park Municipal Court was "located in the same building as the headquarters of the Seaside Park Police Department," that he had not had a motor vehicle violation in 24 years prior to the January 2012 stop, that he had "rarely seen" two policemen in a patrol car and that a "planned arrest is arguably a reason for such a two-man assignment" – make clear that

6

his assertions are pure conjecture. See Cal. Pub. Emp. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (a court need not accept unsupported inferences). Taken as a whole, his allegations do not render plausible the conclusion that his arrests were in retaliation for his actions in displaying the sign, or, to the extent the complaint may be read to allege a claim of conspiracy under § 1983, that the defendants conspired to violate his First Amendment rights. See Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully."); see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) (vague allegations are insufficient to support an inference of an illicit agreement to deprive an individual of his constitutional rights).

Indeed, the record[3] makes clear that each arrest by the defendant officers was based on either probable cause or an arrest warrant, and, for that matter, resulted in Miller's conviction.[4] Miller acknowledged in the District Court that he "did not appear at any time in Seaside Park Municipal Court regarding the summonses that were associated with the sign attached to his truck," that he continued to drive with a suspended driver's license, and, on three separate occasions, "reversed his intended direction of travel and

---

[3] The District Court properly considered public documents, such as arrest reports and records of conviction, in ruling on the 12(b)(6) motion. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993).

[4] To the extent that Miller seeks to attack any of these convictions, his claim is barred. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (holding that a state prisoner's claim for damages is not cognizable under § 1983 if it calls into question the lawfulness

slowly returned to his home" when signaled by members of the Seaside Park police department to stop. Compl. at ¶¶ 24, 41, 82, 99, 102. He made much of the fact that he was found not guilty on some of the motor vehicle violations resulting from his arrest by Defendants Brady and Mantz. But he was convicted on 13 of the 18 charges, including the charge that *precipitated* the pursuit, as well as on the charge of eluding a law enforcement officer. Accordingly, we do not see how he can plausibly claim that the actions of Brady and Mantz amounted to retaliation.[5]

Assuming *arguendo* that the police officers had violated Miller's constitutional rights, his remaining claims against Defendants Larkin and the Borough would still fail. Miller maintains on appeal that "it is arguable that the egregious actions of Bonner, Brady, and Mantz were taken upon [Larkin's] order and upon his assurances of protection." However, Miller offered no facts to support his allegation that the officers acted at the direction of Defendant Larkin. See Santiago v. Warminster Twp., 629 F.3d

---

of his conviction or confinement).

[5] We note several facts which Miller maintains the District Court failed to address. Other than his appearance in Seaside Heights Municipal Court on the charge of driving with a suspended license, Miller admits that he did not appear in Court to confront or challenge in any way his violations, criminal charges, or convictions; he says he did this because of his belief that they stemmed from an unconstitutional interpretation of § 25-624E. But the fact that he appeared at a Seaside Park council meeting and "demanded that efforts cease to prevent the exercise of free speech" was insufficient to assert his rights. The process provided for a hearing on the alleged violation of § 25-624E in Seaside Park Municipal Court, at which Miller failed to appear. Miller could have contested the validity of the interpretation of the ordinance at his violation hearing or by filing an appeal. His failure to appear at the hearing and to pay the subsequent fines directly resulted in the suspension of his driver's license and his arrest.

8

121, 129-30 (3d Cir. 2010) (to state a claim for supervisory liability, a plaintiff must plead facts plausibly demonstrating that the official directed others to violate the plaintiff's rights). To the extent that he sought damages against Larkin in his official capacity, his claim is in effect an action against the municipality. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). We agree with the District Court that Miller failed to state a claim against the Borough for the acts of its police officers because it could not be held liable in a § 1983 action on a theory of respondeat superior. See id. at 694. Instead, liability may be imposed only where it can be shown that the municipality had a policy, regulation, custom, or practice that led to the alleged constitutional violation. See Mulholland v. Gov't County of Berks, 706 F.3d 227, 237 (3d Cir. 2013). Miller failed to allege facts demonstrating the existence of a municipal policy or custom.

Finally, the District Court appears to have dismissed on qualified immunity grounds Miller's claim against Defendant Bonner for damages resulting from his "knowingly false report that was used to support an attempt to confine him to a psychiatric facility." Miller argues on appeal that the dismissal was in error. The qualified immunity doctrine protects government officials from suits seeking to impose personal liability pursuant to § 1983 for money damages based on conduct that was not objectively reasonable. Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000). We will uphold a grant of qualified immunity on a 12(b)(6) motion "only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (quotation marks and citation omitted).

9

In his report, Bonner cited Miller's "irrational" behavior at the time of his arrest as well as Miller's "recent progression of his dissimilar behavior"[6] as a basis for a psychiatric screening. In his complaint, Miller disputed that he was "irrational" or "enraged" at the time of the arrest; as evidence that Bonner falsified his report, he provided a copy of a video of his arrival at the police station 12 minutes after his arrest where he is allegedly "absolutely calm." Miller also provided evidence that he does not have "grates" on his windows, but rather "Bahama shutters"; and he took issue with Bonner's depiction of his signs as "paranoiac."

At this stage of the proceedings, the District Court was required to accept Miller's allegations as true and, affording him the benefit of all reasonable inferences, determine whether there is any set of facts [Miller] could prove that would support a denial of

---

[6] Bonner cited Miller's

"recent increase of police interaction, as well as his defiance towards law enforcement, and his persistence for refusing to obey laws, court orders and answer to fines. . . . [He] further advised PESS of Miller's paranoiac statements regarding corruption within the government and police department. In support of this, [he] informed the screener about his large billboard style signs that are mounted on the rear of this pick-up truck that displays his allegations of government corruption. Another example [he] provided was that in the recent past, [he] would often observe Miller outside his residence completing projects and working on his vehicle or house, and now recently, Miller had placed metal grates of the exterior windows of his house and is infrequently seen outside. [He] also provided to PESS of the incident when Miller came out of his residence and began yelling at Patrolman Del Conte during a motor vehicle stop."

immunity." Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992).  Applying this standard, we conclude that Miller failed to state a claim for relief.

In determining whether qualified immunity applies, a court may first consider whether the plaintiff has asserted the violation of a constitutional right.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  "[A] plaintiff may succeed in a § 1983 action for false arrest  . . . [by establishing] that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant . . . and  . . . that such statements or omissions are material, or necessary, to the finding of probable cause."  Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (quotation marks and citation omitted)[7].  We conclude that Officer Bonner's actions in contacting PESS were reasonable based on the *undisputed* information in his report.  The fact that he may have mistaken the shutters for grates or he described Miller's signs in a particular way is insufficient to suggest that his actions were not reasonable in light of Miller's noted, recent behavior.  See Anderson v. Creighton, 483 U.S. 635, 641 (1987) (noting that even law enforcement officers who reasonably but mistakenly conclude that probable cause is present are entitled to immunity).  In sum, the facts as alleged failed to make out a violation of a constitutional right, as there was sufficient probable cause to believe Miller was in need of a psychiatric evaluation.  This conclusion is further supported by the fact that the Unit screener, after independent

---

[7]  It is well-established that the Fourth Amendment applies in both civil and criminal proceedings.  Doby v. DeCrescenzo, 171 F.3d 858, 871 (3d Cir. 1999).

11

assessment, determined that Miller should be transported to the hospital for further evaluation. Accordingly, Bonner was entitled to the grant of qualified immunity.

Based on the foregoing, we will affirm the District Court's dismissal of the claims against each the individual defendants, and remand for consideration of his First Amendment challenge to the ordinance as it was applied to him.