# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 12, 2024          Decided July 2, 2024

No. 22-5219

TOMMY HO,
APPELLANT

v.

MERRICK B. GARLAND, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE UNITED STATES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-01035)

———

*Mohammad Mujtaba Ali*, appointed by the court, argued the cause for appellant as *amicus curiae* in support of appellant. With him on the brief was *Hilary P. Gerzhoy*.

*Johnny H. Walker*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Brian P. Hudak*, and *Jane M. Lyons*, Assistant U.S. Attorneys. *Thomas Duffey* and *R. Craig Lawrence*, Assistant U.S. Attorneys, entered appearances.

Before: KATSAS and GARCIA, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

1

Opinion for the Court filed by *Circuit Judge* GARCIA.

GARCIA, *Circuit Judge*:   The question in this case is whether *pro se* appellant Tommy Ho adequately pled that his employer declined to promote him in retaliation for activity protected by Title VII.  Though the question is close, reading Ho's complaint as a whole and favorably to him, we conclude that he has done so.

**I**

**A**

Because this case comes to us on review of a motion to dismiss, we accept the factual allegations in Ho's complaint as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Tommy Ho is an Asian American who has worked for the federal government since 1999.  Compl. ¶¶ 6, 13, *Ho v. Garland*, No. 21-cv-1035 (D.D.C. Apr. 12, 2021), ECF No. 1. From May 2015 to October 2019, he was employed as a GS-13 criminal investigator in the Office of Strategic Intelligence and Information ("OSII") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in Washington, D.C.  *Id*. ¶ 13.

In 2015, Ho filed an Equal Employment Opportunity ("EEO") complaint alleging that ATF racially discriminated against him by involuntarily transferring him to OSII.  *Id*. ¶ 15. In 2017 and 2018, Ho applied for three GS-14 promotions, but was not selected for any of them.  *Id*. ¶ 16.  Ho filed two EEO complaints alleging that two of those non-selections were due to retaliation.  *Id*.  In those EEO complaints, Ho identified OSII Assistant Director James McDermond, OSII Operation Intelligence Division Chief Kevin O'Keefe, and OSII Field Intelligence Support Branch Chief Edward Kropke as "Responsible Management Officials."  *Id*. ¶ 18.  Each either

answered interrogatories or was deposed in the subsequent proceedings. *Id*.

This case centers on Ho's application for another GS-14 position in June 2019, this time as a program manager in the OSII's Internet Investigation Center. *Id*. ¶ 19. The position was originally advertised to lateral GS-14 applicants, but no one applied. *Id*. ¶ 25. Because there was a "need" for the position, OSII opened the position to GS-13 applicants like Ho. *Id*. At that point, McDermond was Ho's fourth-line supervisor, and O'Keefe was his second-line supervisor. *Id*. ¶ 21. O'Keefe had previously given Ho positive performance appraisals for 2018 and 2019. *Id*. ¶ 26. Ho had experience in conducting criminal investigations through the Internet, Opp'n to Mot. to Dismiss 4, *Ho v. Garland*, No. 21-cv-1035 (D.D.C. Dec. 7, 2021), ECF No. 9, and O'Keefe had "stated he was aware that [Ho] has experience in conducting Internet investigations," Compl. ¶ 26, and had "solid skills and investigative knowledge," Opp'n to Mot. to Dismiss 6. On August 8, 2019, ATF Human Resources told Ho he was "among the best qualified for the position." Compl. ¶ 19.

On August 28, 2019, a four-member panel, which consisted of O'Keefe, Kropke, and two other officials, interviewed Ho and three other applicants. *Id*. ¶¶ 20, 23. O'Keefe was the "primary member of the panel." *Id*. ¶ 23. According to O'Keefe, at "some point" during "the selection process," McDermond "intervened or spoke[] to the . . . panel and told or suggested [to] the panel they could choose not to make a selection." *Id*. ¶ 24. A day after the interview, on August 29, 2019, Ho was notified that no one was selected for the position. *Id*. ¶ 22.

Ho asked O'Keefe why no one was chosen. *Id*. ¶ 23. O'Keefe "repeatedly stated [that] all four applicants were

qualified," *id*. ¶ 24, but that two applicants "had outside factors that disqualified them," *id*. ¶ 23. O'Keefe then said that Ho and the remaining applicant "did not answer the interview questions well enough." *Id.* O'Keefe acknowledged that Ho "knocked it out of the park" on some questions, "suggesting [Ho] received perfect scores on those questions." *Id*. O'Keefe nevertheless stated that "he made a judgment based on the answers" that "neither [Ho] nor the other applicant w[as] suited for the position." *Id*. ¶ 24. O'Keefe also stated that "he did not provide the . . . panel with any remarks relating to [Ho] that would deter his suitability for the position." *Id*. ¶ 26. Although there was a "need" to fill the position, O'Keefe said that he was "unsure what OSII will do with the position," and that it "may or may not be re-announced or it may be filled by [a] lateral GS-14 or by [a] GS-13." *Id*. ¶ 25. The other remaining applicant who was not chosen had also engaged in protected activity and been engaged in litigation with ATF since 2014. Opp'n to Mot. to Dismiss 7.

Ho later applied to another GS-14 Supervisory Special Agent position in a different ATF field office in California and was selected on June 6, 2021. *Id.* at 1.

**B**

Ho filed an administrative complaint with ATF alleging retaliation. ATF dismissed that complaint, and the Equal Employment Opportunity Commission affirmed. Ho then filed a *pro se* complaint in district court alleging unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Compl. ¶¶ 28–31. The government moved to dismiss Ho's complaint for failure to state a claim. The district court granted the motion, holding that the complaint failed to sufficiently allege a causal connection between Ho's protected EEO activity and his non-selection for

the program manager position. *Ho v. Garland*, No. 21-cv-1035, 2022 WL 2752612, at \*2 (D.D.C. July 14, 2022).[1] Ho timely appealed. We appointed amicus curiae to present arguments in support of Ho's position.

## II

We review a district court's grant of a motion to dismiss *de novo*. *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020). We "accept the operative complaint's well-pleaded factual allegations as true and draw all reasonable inferences" in Ho's favor. *Id.* A *pro se* complaint is to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015). We also "consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss," which here includes Ho's opposition to the motion to dismiss and attached exhibits. *Brown*, 789 F.3d at 152 (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)); *see Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 529 (D.C. Cir. 2015) (considering exhibits filed by *pro se* plaintiff).

*Pro se* complaints must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). We read the

---

[1] The district court also concluded *sua sponte* that "to the extent Ho seeks to bring a standalone racial discrimination claim based on his non-selection," it would fail. *Ho*, 2022 WL 2752612, at \*3. We do not read the complaint to include a standalone discrimination claim and therefore do not address whether Ho's allegations would suffice to plead such a claim.

complaint "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)); *see Brown*, 789 F.3d at 151 (considering the complaint "*in toto*"). Ho's claim is plausible if he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[D]etailed factual allegations" are not required. *Id.* (quoting *Twombly*, 556 U.S. at 555). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*[2]

Ho alleges that ATF—by not selecting him for the GS-14 program manager position—unlawfully retaliated against him for filing EEO complaints in violation of Title VII. *See* 42 U.S.C. § 2000e-3(a). To prove unlawful retaliation, Ho must show that (1) he "engaged in statutorily protected activity"; (2) ATF took "a materially adverse action" against him; and (3) his

---

[2] Prior to *Twombly* and *Iqbal*, this Court had articulated a more liberal pleading standard for the causation element of Title VII retaliation claims, under which "in order to survive a motion to dismiss, all the complaint has to say, is 'the [defendant] retaliated against me because I engaged in protected activity.'" *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (cleaned up); *see also Sparrow v. United Air Lines Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000). This standard was based on *Conley v. Gibson*, 335 U.S. 41 (1957), which the Supreme Court abrogated in *Twombly* and *Iqbal*, *see* 550 U.S. at 560–63; 556 U.S. at 670. Thus, like a "chorus" of district judges in this Circuit, we hold that this pleading standard from *Rochon* and *Sparrow* "is no longer binding authority." *Easaw v. Newport*, 253 F. Supp. 3d 22, 29 n.4 (D.D.C. 2017).

protected activity was a but-for cause of that adverse action. *Howard R.L. Cook & Tommy Shaw Found. Ex rel. Black Emps. of Libr. Of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

The parties and district court agreed that Ho adequately pled that his EEO complaints were protected activity and that his non-selection was an adverse action. But they dispute whether he pled sufficient facts to support a plausible inference that his protected activity was a but-for cause of his non-selection. To resolve that dispute, we address each of Ho's relevant allegations in the light most favorable to him, and then consider their combined effect. Viewed that way, and bearing Ho's *pro se* status in mind, Ho's allegations narrowly "nudge[]" his claim "across the line from conceivable to plausible." *Brown*, 789 F.3d at 152 (quoting *Twombly*, 550 U.S. at 570).

To start, like many plaintiffs seeking to allege retaliation without direct evidence of causation, Ho argues that the fact his non-selection followed his protected activity supports an inference that he was not selected due to that activity. Specifically, he filed three EEO complaints about discrimination and retaliation at ATF in 2015, 2017, and 2018, the latest of which was filed on October 21, 2018.[3] Compl.

---

[3] Ho also filed a Merit Systems Protection Board complaint against ATF in 2019, Compl. ¶ 17, but did not argue below that the complaint should be considered protected activity for purposes of his retaliation claims, *see id.* ¶ 29 (noting prior "EEO complaints . . . constituted activity protected by Title VII"); *id.* ¶ 14 (describing 2015, 2017, and 2019 EEO complaints); Opp'n to Mot. to Dismiss 8 (describing "three prior EEO complaints" as the relevant protected activity). As the district court correctly explained, Ho also failed to

¶ 14; Opp'n to Mot. to Dismiss 8. He alleges that his supervisors knew about that protected activity and argues that they subsequently did not select him for the program manager position on August 29, 2019 because of that protected activity. Compl. ¶¶ 14, 18, 22. The government counters that the ten-month gap between Ho's latest protected activity on October 21, 2018 and his non-selection on August 29, 2019 is too long to support such an inference.

The district court agreed with the government and dismissed Ho's complaint—if Ho relied on only this fact, we would too: The ten-month gap alleged here is likely too long to support an inference of causation on its own.

A plaintiff can sometimes plead causation by relying solely on the fact that an adverse action shortly followed the plaintiff's protected activity. *See, e.g.*, *Pratt v. Pompeo*, 318 F. Supp. 3d 34, 40 (D.D.C. 2018) (causation adequately pled based on mere two months between protected activity and adverse action). But the temporal connection must be "close." *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003). Although "neither the Supreme Court nor this court has established a bright-line" rule, "the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012); *see Clark Cnty. Sch.*

---

respond below to the government's assertion that this complaint was a whistleblower complaint which does not qualify as protected activity for purposes of Title VII retaliation. *Ho*, 2022 WL 2752612, at *3. We therefore do not consider the Merit Systems Protection Board complaint as protected activity relevant to Ho's retaliation claim.

*Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (concluding a gap of twenty months "suggests, by itself, no causality"); *see also Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007), *abrogated on other grounds by Green v. Brennan*, 578 U.S. 547 (2016). Measured against that yardstick, the ten-month gap alleged here appears to be too long to support an inference of causation on its own.

Ho's complaint, however, does not rely solely on the timing of his non-selection in relation to his EEO complaints. He pled several other facts—some of which the district court did not address—that together support an inference of causation. *See Harris v. D.C. Water and Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015) (declining to consider whether five-month gap was too long when plaintiff pled other facts supporting inference of causation); *cf. Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020) (granting motion to dismiss on fifteen-year gap because there were "no additional factual allegations support[ing] causation").

First, Ho alleged that some of the officials responsible for filling the program manager position were the same individuals he named as Responsible Management Officials in his three prior EEO complaints. Compl. ¶ 21. Ho listed O'Keefe, Kropke, and McDermond as Responsible Management Officials in his 2015, 2017, and 2018 complaints, the latter two of which alleged that he was not selected for two separate GS-14 promotions because OSII management was retaliating against him. *Id.* ¶¶ 16–18. In connection with at least one of those complaints, both O'Keefe and McDermond were required to answer interrogatories and sit for depositions, and Kropke answered interrogatories. *Id.* ¶ 18. In the non-selection at issue here, O'Keefe and Kropke both served on Ho's selection panel of four interviewers and O'Keefe was the

"primary member" of the panel. *Id.* ¶¶ 21, 23. McDermond "intervened" at some point during the selection process and "suggested" to the panel that it could "choose not to make a selection." *Id.* ¶ 24.

The government argues that these facts suggest only that the decisionmakers had knowledge of Ho's protected activity, which is a requirement for any retaliation claim. *See Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985); *Breeden*, 532 U.S. at 273 (no inference of causation when decisionmaker did not know that plaintiff had filed an EEO complaint about another employee's conduct). But Ho's allegation is meaningfully different from a mere allegation that O'Keefe, Kropke, and McDermond knew, for example, that Ho had previously filed a complaint about *someone else*, somewhere in the workplace. Ho's allegation is that he previously complained *about them*. Viewing that fact favorably to Ho, it is reasonable to infer that a supervisor is more likely to retaliate against an employee that they know has previously complained about their own behavior than against an employee who has complained only about others.

Several cases recognize the salience of this type of fact. At least two district judges in this Circuit have correctly reasoned that the fact a decisionmaker both knows about *and* was involved in a prior EEO complaint strengthens an inference of causation. *See Buggs v. Powell*, 293 F. Supp. 2d 135, 149–50 (D.D.C. 2003); *Winston v. Clough*, 712 F. Supp. 2d 1, 11–12 (D.D.C. 2010). And two of our cases have made the inverse point, noting that if a decisionmaker merely knows about protected activity—but is not involved in or targeted by the prior complaint—that fact weakens an inference that the decisionmaker might have retaliatory animus. *See Vickers v. Powell*, 493 F.3d 186, 196 (D.C. Cir. 2007) (finding evidence insufficient to infer retaliation at summary judgment when

decisionmaker in adverse action knew of plaintiff's complaints but did not "participate in any of the alleged incidents that make up [plaintiff's] hostile work environment claim"); *Gilbert v. Napolitano*, 670 F.3d 258, 263 (D.C. Cir. 2012) (similar). Because Ho not only alleged that Kropke, O'Keefe, and McDermond had knowledge of his prior EEO complaints but also that they were involved in those disputes, Ho's allegations support a materially stronger inference of retaliation akin to those in *Buggs* and *Winston*.

Second, Ho pled several facts suggesting that he was well-qualified for the position. ATF Human Resources told Ho he was "among the best qualified for the position." Compl. ¶ 19. More importantly, O'Keefe also told Ho that Ho was "qualified for the position," that O'Keefe was "aware" of Ho's "experience in Internet investigations," and that Ho had "'knocked it out of the park'" on some interview questions. *Id.* ¶¶ 23–24, 26.

Third, Ho's allegations support the inference that ATF had a strong desire to fill the position. Per the complaint, ATF initially advertised the position to lateral GS-14s, but later opened it to GS-13 applicants like Ho because no one had applied and there was "a need" to fill the position. *Id.* ¶ 25. After no applicant was selected, O'Keefe told Ho that he was "unsure what OSII will do with the position" and that the position "may or may not be re-announced or it may be filled by lateral GS-14 or by GS-13." *Id.* ¶ 25.

These second and third points, viewed in the light most favorable to Ho, support his claim by establishing that his non-selection was not due to the "two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *Teneyck v. Omni*

*Shoreham Hotel*, 365 F.3d 1139, 1150 (D.C. Cir. 2004) (citation omitted); *see Harris*, 791 F.3d at 69. At the motion to dismiss stage, a plaintiff need not "rule out every possible lawful explanation," but rather only dispel any "obvious alternative explanation[s]." *Wilson*, 850 F.3d at 373 (citing *Iqbal*, 556 U.S. at 682). Ho has done so here.

Finally, the alleged reason for Ho's non-selection is entirely subjective. The facts alleged suggest that even though ATF needed to fill the position, it chose not to promote either of the two qualified applicants based on a subjective "judgment" that they "did not answer the interview questions well enough." Compl. ¶¶ 23–24. Such an exclusively subjective basis for the challenged action must be treated with "caution." *Hamilton*, 666 F.3d at 1356. We have "repeatedly expressed concern about the ease with which heavy reliance on subjective criteria may be used to 'mask' or 'camouflage' discrimination." *Id.* (citation omitted). Such "caution" is "particularly appropriate here," *id.*, given that the only other qualified applicant had also engaged in similar protected activity, yet was rejected for the same subjective reason. Although poor interview performance may certainly be a legitimate basis for Ho's non-selection, at this stage we have no further details about what was said in the interview or by what criteria the panelists judged Ho. A "complaint survives a motion to dismiss" when "there are two alternative explanations, one advanced by the defendant, and the other advanced by the plaintiff, both of which are plausible." *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (cleaned up).

Viewed in isolation, none of these allegations would be sufficient to support an inference that ATF declined to promote Ho in retaliation for his prior protected activity. But we must read "the allegations of the complaint as a whole." *Matrixx*

*Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011). From that broader perspective, and construing the allegations in Ho's favor, a fuller picture emerges. ATF had a serious need to fill the position. Ho was qualified for the position, and the decisionmakers acknowledged as much. But he had previously complained about the conduct of the very people responsible for filling the opening. They said he did well in the interview, but still did not select him on the entirely subjective ground that he did not do "well enough." Compl. ¶ 23. And the only other qualified applicant who was also deemed not to have done "well enough" also happened to have engaged in similar protected activity. Taken together, and considering Ho's *pro se* status, these allegations narrowly suffice to support a plausible inference that Ho's protected activity was a but-for cause of his non-selection.

The district court and government either ignore or improperly draw adverse inferences from these allegations. For instance, the district court concluded that the allegations "suggest that ATF ha[d] simply given up on filling the program manager position." *Ho*, 2022 WL 2752612, at *3. The government makes a similar argument. *See* Appellee's Brief 27. Even if that were one reasonable inference from the facts alleged, that is not the proper mode of analysis when resolving a motion to dismiss. We must instead draw inferences in favor of the plaintiff, and with a *pro se* plaintiff, we should be especially careful to "liberally construe" the complaint's allegations. *Erickson*, 551 U.S. at 94. Here, Ho's complaint alleges that ATF had expanded the opening to GS-13 applicants because of the "need" to fill the position, and then that after his non-selection, O'Keefe said he had not yet decided what to do with the position and that it "may be filled by lateral GS-14 or by GS-13" applicants. Compl. ¶ 25. O'Keefe even gave Ho a reason he was not selected: his interview performance, not that ATF had given up on filling

the position.  It is at least a reasonable inference in Ho's favor that ATF was interested in filling the position both when it decided not to promote Ho and even shortly thereafter, even if it had not yet decided how to do so.[4]

The government makes a similar methodological error by arguing that the complaint's factual allegations are not supported by evidence, instead of taking the complaint's allegations as true and arguing that they nonetheless fail to support any inference of causation.  For example, at oral argument, the government disputed the allegations about Ho's qualifications by pointing to the details of his resume (which was attached to his opposition to ATF's motion to dismiss) and arguing he did not have sufficient internet investigation experience for the position.  *See* Oral Argument Transcript at 18:7–23.  That argument is appropriate for summary judgment, but not on a motion to dismiss.  At this stage, our "role is not to speculate about which factual allegations are likely to be proved after discovery" but rather to decide whether Ho "alleged facts that, taken as true, render his claim of retaliation plausible."  *Harris*, 791 F.3d at 70; *see also Norgren v. Minn. Dep't of Hum. Servs*., 96 F.4th 1048, 1055 (8th Cir. 2024) (explaining that while a plaintiff's qualifications "may be open to interpretation, any doubts . . . must be construed" in the plaintiff's favor).  And the complaint, construed in Ho's favor, pleads that Ho has sufficient internet experience, as indicated by the fact that "O'Keefe has stated he was aware that [Ho] has

---

[4] The district court also found that its conclusion was "bolstered" by Ho's later promotion to another GS-14 job in a different ATF field office in California.  *Ho*, 2022 WL 2752612, at *3.  Although we do not believe that fact supports any reasonable causal inference in Ho's favor, the district court erred by drawing an inference—the basis for which is not apparent—that his selection for that position somehow cuts against his claim of retaliation.

experience in conducting Internet investigations," Compl. ¶ 26, and the fact that Ho's resume lists several work experiences in "Internet-based Investigations with ATF," Opp'n to Mot. to Dismiss, Ex. 1.

Perhaps the evidence ultimately will show that Ho did not have the requisite experience in Internet investigations, or that he interviewed poorly, or that OSII simply decided no one was needed for the role anymore, any of which might very well rebut Ho's claim on summary judgment. But that is for discovery to uncover. A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015) (quoting *Twombly*, 550 U.S. at 556). In this close case, we find that the facts pled in this complaint, taken in totality, have "nudged" Ho's claim "across the line from conceivable to plausible." *Brown*, 789 F.3d at 152 (quoting *Twombly*, 550 U.S. at 570).

### III

The district court's judgment is reversed, and the case is remanded for proceedings consistent with this opinion.

*So ordered.*