**Patrick T. BENIC, Plaintiff,**

v.

**REUTERS AMERICA, INC. and Reuters Group, PLC, Defendants.**

No. 01–1367 (RJL).

United States District Court, District of Columbia.

Sept. 2, 2004.

---

Robert Brian Fitzpatrick, Fitzpatrick & Associates, Washington, DC, for Plaintiff.

Felice B. Ekelman, Jackson Lewis LLP, New York, NY, for Defendants.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are the plaintiff's claim of wrongful discharge under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and common law claim of defamation. The defendant has moved for summary judgment on both claims pursuant to Fed.R.Civ.P. 56. The plaintiff, Patrick T. Benic ("Benic"), claims that the defendants, Reuters America and Reuters Group, wrongfully discharged him in retaliation for his criticism of the news organization's employment policies. In addition, Benic claims that Reuters defamed him on three separate occasions at the time of his termination. Reuters moves for summary judgment on the grounds that Benic has failed to introduce admissible evidence raising any genuine issue of material fact that demonstrates Benic can prove either the wrongful discharge or the defamation claim. The Court DENIES the defen-

dant's motion for summary judgment on the plaintiff's wrongful discharge claim[1] and for the following reasons GRANTS the defendant's motion for summary judgment on the plaintiff's defamation claim.

### Background

Benic, began working for Reuters in Hong Kong in 1985. Pl.'s Compl. ¶¶ 8–9. By 1997, Benic had moved to the District of Columbia to serve as the News Picture Editor at Reuters America, Inc. where he continued with the news organization until his termination on June 1, 2000. *Id.* ¶¶ 8–9, 11. Stephen Crisp, the Reuters Global Pictures Editor was Benic's supervisor at the time and he was the company official who notified Benic of his termination in a meeting attended by David Schlesinger, the Reuters America Editor. *Id.* ¶ 23, 43; Schlesinger Dep. at 4–5. According to Benic, Crisp told him that one of the reasons for his termination was that he lacked

support from his staff, Pl.'s Dep. at 106, but that his termination would still be formally classified as a consequence of a Reuters reorganization, *see* Pl.'s Compl. ¶ 23.

Following Benic's termination, Reuters employees made three separate statements that form the basis of Benic's defamation claim. The first statement occurred on June 9, 2000, and consisted of an Intranet posting by Crisp and Schlesinger notifying Reuters employees of Benic's departure. *Id.* ¶ 26. The notification stated, "[w]e are restructuring Reuters News Pictures and as part of this process Pat Benic has left the [c]ompany." Pl.'s Ex. 24. Approximately seventeen thousand Reuters employees had access to this departure notice. Schlesinger Dep. at 86. Benic alleges that several employees believed that the style of the notice *implied* that Benic was terminated for criminal or unethical behavior because the notice was shorter, and

---

1. Originally, Benic's cause of action included three claims: (1) Count I alleging wrongful discharge (based on a retaliation theory); (2) Count II alleging age discrimination; and (3) Count III alleging defamation. On June 21, the defendants filed a motion to dismiss the plaintiff's retaliation claim. The motion was denied on August 1, 2001, by District Judge Gladys Kessler, who originally heard this case. The case was then transferred to District Judge John D. Bates who on March 8, 2002, dismissed Count II, the age discrimination claim, with prejudice. The case was later transferred to this Court with only the retaliation and defamation claims remaining. For the following reasons, this Court DENIES Reuters' Motion for Summary Judgment on the retaliation claim.

Benic's wrongful discharge claim is based on a theory of retaliation for protected activity and it was originally brought in Superior Court under the Fair Labor Standards Act ("FLSA") and the D.C. Wage laws. 29 U.S.C. § 215(a)(3); D.C. Cods § 36–220.9. As to this claim, the Court concludes that there remains a genuine issue of material fact such that a jury could determine that Reuters did in fact

terminate Benic in retaliation for his complaints to management regarding the London office's classification of "stingers," i.e. freelance photographers, as opposed to staff photographers. Specifically, the Court finds that Benic has made out a prima face case of retaliation by establishing that: (1) Reuters was aware of activity by Benic that qualified as protected activity; (2) that adverse employment action was taken against Benic; and (3) that the protected activity appears to have been the cause of Benic's termination. *See e.g. Caryk v. Coupe,* 663 F.Supp. 1243, 1253 (D.D.C.1987). Although Reuters does articulate a legitimate, non-discriminatory reason for Benic's termination (i.e. that he was allegedly a "bad manager"), Benic introduces sufficient evidence to establish that Reuters' proffered reason may have been pretextual (i.e. one of the stated reasons for Benic's termination was his relationship with the London office and the normal termination procedures were not used in Benic's case). *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (establishing the burden shifting framework for analyzing employment discrimination claims).

more terse, than previous employee departure notices. Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n to Summ. J.") at 37–39.

The second statement occurred on June 13, 2000, when Larry Rubenstein, the Deputy Reuters America Pictures Editor, allegedly told Craig Mailloux, the Director of Photography at the Ventura County Star, that Reuters had fired Benic because he was a "bad manager." *Id.* at 15; Pl.'s Compl. ¶ 27; Mailloux Aff. ¶¶ 3, 10. According to Mailloux, who had worked closely with Benic from 1976 to 1980, Rubenstein made two such statements to him during a conversation at the Democratic National Convention in 2000. *Id.* ¶¶ 7, 9. Apparently, no one else heard this statement. *See id.* ¶ 11; *cf.* Pl.'s Dep. at 307–08.

The final statement regarding Benic's termination occurred in January 2001. Pl.'s Opp'n to Summ. J. at 15. On that occasion, Crisp allegedly told Horst Faas, a senior Associated Press ("AP") manager in London, that Benic caused many problems at Reuters. Pl.'s Compl. ¶ 53. Faas is alleged, in turn, to have told AP's London editor, Michael Feldman, about his conversation with Crisp. Pl.'s Dep. at 24, 34. Several weeks later, Feldman allegedly recounted this story of Crisp's conversation with Faas in a conversation with Benic. *Id.* at 30–31. Shortly thereafter, Benic was notified that he would not be offered the position for which he had applied at AP. *See id.* at 29. After receiving this notification, Benic contacted Faas personally, who recounted his conversation with Crisp to Benic. *Id.* at 31–33. Benic brought the current action on May 29, 2001, alleging claims of wrongful discharge and defamation. Pl.'s Compl. ¶ 1.

### Standard of Review

Summary judgment is appropriate when the pleadings and the record demonstrate

that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c), (e)). In determining whether a genuine issue of material fact is in dispute, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505. Affidavits presented by the parties both for and against summary judgment "shall set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e).

### Analysis

■ To establish a defamation claim in the District of Columbia, a plaintiff must prove the following elements: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence;

and (4) that either the statement was actionable as a matter of law irrespective of special harm or its publication caused the plaintiff special harm." *Klayman v. Segal,* 783 A.2d 607, 613 n. 4 (D.C.2001). Reuters's summary judgment motion focuses primarily on the first element, that is, whether the statements were actually false and defamatory.

A statement is defamatory "if it tends to injure [a] plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Olinger v. Am. Sav. & Loan Ass'n,* 409 F.2d 142, 144 (D.C.Cir.1969). To qualify as defamation, a statement must cause the plaintiff to appear " 'odious, infamous, or ridiculous.' " *Howard Univ. v. Best,* 484 A.2d 958, 989 (1984) (quoting *Johnson v. Johnson Publ'g Co.,* 271 A.2d 696, 697 (D.C.1970)). Comments that are "unpleasant or offensive" are insufficient. *Id.* The court must determine "as a threshold matter" whether a statement is capable of being construed as defamatory. *Moss v. Stockard,* 580 A.2d 1011, 1023 (D.C.1990). "If the meaning of the words as published is unambiguous and fairly susceptible of but one meaning," the court can rule as a matter of law as to whether that meaning is defamatory. *Levy v. Am. Mut. Liab. Ins. Co.,* 196 A.2d 475, 476 (D.C.Cir.1964). The publication must be considered "as a whole, and in the sense in which it would be understood by the readers to whom it was addressed." *Afro–American Publ'g Co. v. Jaffe,* 366 F.2d 649, 655 (D.C.Cir. 1966) (en banc). If statements appear to be "at least capable of a defamatory meaning, whether they [are] defamatory and false are questions of fact to be resolved by the jury." *Moss,* 580 A.2d at 1023 (citing *Olinger,* 409 F.2d at 144).

Truth is an absolute defense to defamation claims. *Olinger,* 409 F.2d at 144. This defense may be established by demonstrating that the statements in question are "substantially true." *Lohrenz v. Donnelly,* 223 F.Supp.2d 25, 59 (D.D.C. 2002). "Substantially true" means that the "gist" of the statement is true or that the statement is substantially true, as it would be understood by its intended audience. *Moss,* 580 A.2d at 1023.

In this case, Benic claims that Reuters employees made defamatory statements about him on three separate occasions. Pl.'s Compl. ¶¶ 51–53. Reuters responds by contending that: (1) the Intranet notice of Benic's departure was true and not defamatory, thereby failing to constitute the first element of defamation, Defs.' Mem. in Supp. of Summ. J. at 28; (2) Rubenstein's statement that Benic was fired for being a bad manager was true, also failing to meet the first element of defamation, *id.* at 32; and (3) Crisp's alleged negative statements about Benic to an AP staffer are unsupported by any admissible evidence, *id.* at 32–33. The Court agrees with Reuters and finds that Benic has failed to raise a genuine issue of material fact demonstrating that a reasonable jury would have sufficient evidence to find in his favor at trial.

### A. *Reuters's Intranet Announcement of Benic's Departure*

The first statement that Benic alleges to be defamation is the Reuters Intranet posting that stated, "[w]e are restructuring Reuters News Pictures and as part of this process Pat Benic has left the [c]ompany." Pl.'s Compl. ¶ 26; Pl.'s Ex. 24. Reuters argues that the announcement of Benic's departure was factually accurate and therefore cannot constitute defamation. Defs.' Mem. in Supp. of Summ. J. at 28 (citing *Olinger,* 409 F.2d at 144). Indeed, nothing in the plain language of the Reuters notice is defamatory. However, Benic alleges that the posting nonetheless gave rise to the false and defamatory "implication" that Benic had en-

gaged in criminal or unethical activity because it differed substantially from the typical Reuters departure notice.[2] Pl.'s Opp'n to Summ. J. at 35–36. Benic failed, though, to produce sufficient evidence that would demonstrate that Reuters had used in the past a particular form of notice that employees would have been associated with criminal or unethical conduct. Likewise, Benic failed to offer sufficient evidence that Reuters used a standard departure notice so different from Benic's that the difference would have implied criminal or unethical conduct.[3] *See Wallace*, 715 A.2d at 878 n. 5 (finding that an essential element of the "defamatory conduct" claim was the conduct's alleged association with attorneys engaged in criminal or unethical activity).

At most, Benic alleges that several employees reading his departure announcement assumed that Benic had committed a crime. Specifically, Benic submits the deposition testimony of his wife and colleague, Margaret Fox, that she had come to such a conclusion. Pl.'s Opp'n to Summ. J. at 37–38. Fox testified that Leslie Gervitz, another Reuters employee, and Stephen Jukes, Benic's former supervisor, also thought the Reuters announcement implied criminal conduct. Fox Dep. at 54, 87–91. However, Benic failed to produce testimony from Gervitz or an e-mail that Gervitz allegedly sent to Fox after she received the announcement. *Cf. id.* at 87–88. Benic did submit a deposition from Jukes, but in the deposition Jukes testified that he never indicated to Fox that the Reuters announcement caused Benic to appear guilty of criminal behavior. Jukes Dep. at 249.

While Fox's testimony regarding Gervitz and Jukes is inadmissible hearsay, they would not be sufficient, even if admissible, to create a genuine issue as to the defamatory nature of the Intranet notice.[4] Defamatory statements should not be "interpreted by extremes" but "con-

2. To support this contention, Benic references *Wallace v. Skadden Arps, Slate, Meagher & Flom*, 715 A.2d 873 (D.C.1998), which established that defamation may arise from conduct with a defamatory implication. In *Wallace*, the alleged defamatory conduct was the deactivation of an employee's access key after she was fired from the law firm—treatment allegedly doled out only to individuals accused of crimes. *Id.* at 877. In contrast, the only "conduct" at issue in Benic's situation was the distribution of the e-mail itself. To the extent that the Reuters's posting was "conduct" at all (as opposed to regular publication of a statement), Benic fails to offer evidence that such a notice was normally used in particular instances such that it would necessarily impart a defamatory quality to the statement.

3. Benic introduced depositions from his wife, Margaret Fox; David Smith, another Reuters employee; and Stephen Jukes, Benic's supervisor shortly prior to Benic's termination. Pl.'s Opp'n to Summ. J. at 37–38. According to the testimony cited by Benic, Jukes stated that the notice was "terse," not that it differed from any typical Reuters posting. Jukes Dep.

at 249. Smith testified that Benic's notice was different than he expected and unlike many announcements that included thanks. Smith Dep. at 46, 49. However, Smith also noted that Reuters does not seem to have a standard departure announcement as each announcement differs and one might not be sent at all. *Id.* Fox called Benic's notice "uncharacteristically terse" and described it as shorter than many other announcements, without any reference to Benic's future endeavors. Fox Dep. at 89. However, Fox did not testify to the existence of a standardized, uniform Reuters departure notice. *See id.* at 87–91.

4. Benic also submitted a deposition from David Smith, a Reuters employee who testified that the notice caused him to think that *Benic was terminated for doing "something wrong."* Smith Dep. at 71. However, this conclusion is not defamatory; believing that an individual did "something wrong" is distinct from thinking that the individual was "odious, infamous, or ridiculous" or guilty of a crime. *See Howard Univ.*, 484 A.2d at 989.

strued as the average or common mind would naturally understand [them]," *Guilford Transp. Indus. v. Wilner*, 760 A.2d 580, 594 (D.C.2000). Notwithstanding Benic's evidence that a handful of people thought he might have done something wrong, the Court concludes that the average reasonable reader would not have interpreted the Reuters announcement to mean that Benic had acted in a manner that was "odious, infamous, or ridiculous." The announcement of Benic's departure was "unambiguous" and "fairly susceptible" of meaning only that Benic was leaving Reuters. *See Levy*, 196 A.2d at 476. The worst reasonable implication of this announcement was that Benic had been fired, which is true. Accordingly, this claim cannot survive summary judgment.

### B. *Rubenstein's Comment Regarding Benic's Departure*

 Benic's second allegation of defamation is based on the statement made by the Deputy Pictures Editor of Reuters America to Craig Mailloux. Pl.'s Opp'n to Summ. J. at 15. Rubenstein allegedly told Mailloux that Benic was fired from Reuters because he was a bad manager. Mailloux Aff. ¶ 10. Benic does not dispute that one of Reuters's stated reasons for his termination was that allegedly he was a bad manager, rather Benic vigorously disagrees with the characterization of his management skills. *See* Pl.'s Opp'n to Summ. J. at 43. In an effort to dispute the assessment, Benic presents affidavits from former colleagues who speak favorably of Benic's management style.[5] *Id.* However, this evidence fails to raise a genuine issue of fact that the description of him as a bad manager is false. Indeed, since the plaintiff in a defamation claim must prove that the statement is false, *Klayman*, 783 A.2d at 613, the Court finds that the Benic cannot survive the defendants' Motion for Summary Judgment with respect to Rubenstein's statement.

Defamatory statements couched in terms of the declarant's judgment are multilayered. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 n. 7, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). As explained by the Supreme Court, a statement such as " 'I think Jones lied' " can be false on either of two levels: (1) "[f]irst, that the speaker really did not think Jones had lied but said it anyway" and (2) "second that Jones really had not lied." *Id.* The "second level of falsity" typically serves as the grounds for a defamation claim. *Id.*

Here, the evidence provided by the defendant indicates that on the first level, Rubenstein's statement is technically true in that Benic's managerial skills were cited as one of the reasons for his termination.[6] Regarding the substance of Rubenstein's statement, which was the characterization of Benic as a "bad manager," Benic presented three affidavits and one deposition praising his management skills. Pl.'s Opp'n to Summ. J. at 43. The three affidavits were submitted by individuals with

---

5. Reuters contends that only the employer's opinion about an employee's job performance is relevant to an analysis of that individual's work. Defs.' Reply Mem. in Supp. of Mot. for Summ. J. at 16. However, Reuters offers no defamation cases to support its arguments, only employment discrimination cases, in which only the employer's opinion of an employee's performance is critical in assessing that employer's motivation for termination. *See id.*

6. As evidence, Reuters notes Benic's testimony that Crisp said Benic was terminated because he did not have the support of his staff. Defs.' Reply Mem. in Supp. of Mot. for Summ. J. at 15 (citing Pl.'s Dep. at 88, 106). Schlesinger testified that one of the three reasons for firing Benic was an inability to manage staff. Schlesinger Dep. at 6. Additionally, Crisp testified that Benic's poor interaction with subordinates was one reason that he recommended Benic's termination to Schlesinger. Crisp Dep. at 22–23.

whom Benic worked prior to his three years in Washington, D.C., the time period leading up to Benic's termination. *See* Dufka Aff.; Morris Aff.; and Winning Aff. Therefore, the affidavits are not relevant to an assessment of the quality of Benic's management at the time of his termination. Benic also submits the transcript of a deposition of Bruce McNamee, a photographer in Benic's Washington, D.C. department. McNamee Dep. at 5–7. McNamee testified that Benic "was one of the best bosses [he] ever had," *Id.* at 20. He also praised Benic for his management of subordinates during Reuters's photographic coverage of the 2000 presidential primary election. *Id.* at 47–48. However, McNamee also referred to three subordinates with whom Benic experienced conflict, *id.* at 10 & 23, and admitted that his characterization of Benic's management was just his "personal point of view," *id.* at 9.

A defendant can defend against a plaintiff's defamation claim by demonstrating that the " 'gist' " of the statement is true or that the statement is substantially true, as it would be understood by its intended audience. *Moss,* 580 A.2d at 1023. Here, Benic has submitted evidence from one former subordinate who thought very favorably of him. However, the fact that one employee maintained a positive opinion of Benic's management style does not raise a genuine issue with regard to the truth of the statement in question, i.e. whether Benic's superiors were correct in their assessment that Benic was a bad manager. Within this context, one individual's testimony expressing positive feelings about Benic's management fails to raise a genuine issue of fact regarding the substantial truth of Rubenstein's statement. Consequently, the Court concludes that Benic's defamation claim regarding Rubenstein's statement about Benic's management cannot withstand the defendants' Motion for Summary Judgment.

## C. *Crisp's Alleged Statement to AP's Faas*

The third issue on which Benic bases his defamation claim is the January 2001 conversation between David Crisp, Benic's last supervisor at Reuters, and Horst Faas, a senior member of the London office of AP where Benic had applied for a job. Pl.'s Opp'n to Summ. J. at 43. Benic argues that Crisp's alleged statement to Faas was defamatory and the direct cause of Benic's failure to secure a job with AP London. *See id.* at 43 (citing Pl.'s Dep at 29–32). Benic fails, however, to put forward admissible evidence in support of this claim, and, as a result, cannot survive Reuters's Motion for Summary Judgment. *See* Fed.R.Civ.P. 56(e).

Benic's only evidence of the conversation between Crisp and Faas consists of Benic's own account of what Faas told him Crisp had said. *See* Pl.'s Opp'n to Summ. J. at 43–44. Benic's account of the conversation, however, is inadmissible hearsay. *See* Fed.R.Evid. 801(c). Our Circuit has observed that a party alleging defamation cannot "possibly prevail at trial unless one or more persons could be found to testify to having received the alleged defamations." *Hilton Hotels Corp. v. Banov,* 899 F.2d 40, 43 (D.C.Cir.1990). Because Benic has failed to produce admissible evidence capable of raising a genuine issue of material fact, his final defamation claim also cannot survive Reuters's Motion for Summary Judgment.

### *ORDER*

For the reasons set forth above, it is this 2nd day of September, 2004, hereby

**ORDERED** that the defendant's Motion for Summary Judgment [# 27] with respect to Count I, the plaintiff's wrongful discharge claim, is **DENIED;**

**ORDERED** that the defendant's Motion for Summary Judgment [# 27] with respect to Count III, the plaintiff's defamation claim, is **GRANTED**; and it is further

**ORDERED** that Count III of the above-captioned action shall be dismissed with prejudice.

**SO ORDERED.**