# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 6, 2025         Decided May 22, 2026

No. 24-7068

LUIS JAIME CASTILLO BUTTERS,
APPELLANT

v.

NATIONAL ACADEMY OF SCIENCES AND MARCIA MCNUTT,
APPELLEES

Consolidated with 25-7001

Appeals from the United States District Court
for the District of Columbia
(No. 1:22-cv-03054)

*Milton C. Johns* argued the cause and filed the briefs for appellant.

*Karla Grossenbacher* argued the cause and filed the brief for appellees.

Before: HENDERSON and PAN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* HENDERSON.

GINSBURG, *Senior Circuit Judge*: This consolidated appeal involves claims of defamation, defamation by implication, and false light invasion of privacy relating to the rescission of Luis Jaime Castillo Butters's membership in the National Academy of Sciences. Castillo brought these claims against the NAS and its president, Marcia McNutt, after they made statements concerning Castillo's ouster. The district court dismissed all counts for failure to state a claim on which relief could be granted. We affirm the judgment of the district court with respect to the claim of defamation by implication. Because Castillo has alleged a false statement actionable under a defamation or a false light claim, however, we reverse the judgment as to those claims and remand the case to the district court for further proceedings.

## I. Background

In reviewing the district court's dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept as true the facts alleged by Castillo and view them in the light most favorable to him. *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 150 (D.C. Cir. 2015).

## A. Facts

Castillo is a professor of archaeology at the Pontifical Catholic University of Peru. The NAS, a "private, nonprofit organization of the United States' leading researchers," elected Castillo to be an international member in 2012. First Am. Compl. ¶¶ 4, 12. In the Spring of 2021, a former student of

Castillo's filed a complaint with the NAS. She publicly accused Castillo of sexual harassment in Peru and asked the NAS to expel him.

The NAS rescinded Castillo's membership on October 9, 2021. On the 13th, President McNutt informed NAS members by email that Castillo's membership had been rescinded for a Code of Conduct violation. That email mentioned a password-protected website with further information for NAS members.* On October 15, the NAS made the news of Castillo's ouster publicly available on the organization's website: "Luis Jaime Castillo Butters; NAS Code of Conduct violation, Section 4; membership rescinded." First Am. Compl. ¶ 15, Ex. 1 at 1. Section 4 not only requires members to treat others with respect and collegiality but also broadly prohibits all forms of discrimination, harassment, and bullying. *See id.* Ex. 2 at 1; *see also id.* Ex. 2 at 2 n.iv (defining sexual harassment).

That same day, *ScienceInsider* published a story about the revocation of Castillo's NAS membership under the subheading: "Sexual harassment investigation triggered ejection of Luis Jaime Castillo Butters." Sec. Am. Compl. Ex.

---

* Although the October 13 communication is not attached as an exhibit to the First Amended Complaint, the defendants provided it in their reply memorandum in support of their motion to dismiss the original complaint, and Castillo confirmed the authenticity of the communication in his surreply. We have held that "documents — which were appended to [a] motion to dismiss and whose authenticity is not disputed — may be considered here because they are referred to in the complaint and are integral to [the] claim." *Kaempe v. Myers*, 367 F.3d 958, 965 (2004); *see also W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) ("[I]t is appropriate for the court to look beyond the amended complaint to the record, which includes the original complaint"). Accordingly, we will consider the October 13 communication in full.

4 at 1. It further said this was the "third time in 5 months that the prestigious academy has ejected a member for sexual harassment." *Id.* Ex. 4 at 3. McNutt, presumably contacted by *ScienceInsider* to provide a comment, was quoted as saying NAS "members need to be role models not only in what they have achieved, but also in setting the highest standards for professional conduct." *Id.*

## B. Procedural History

Pursuant to the defendants' motions under Rule 12(b)(6), the district court dismissed Castillo's initial complaint against the NAS and McNutt without prejudice, *Castillo Butters v. NAS* (*Castillo I*), No. 22-cv-3054, 2023 WL 3736513 (D.D.C. May 31, 2023), and then dismissed the defamation and false light claims of his First Amended Complaint with prejudice, *Castillo Butters v. NAS* (*Castillo II*), No. 22-cv-3054, 2024 WL 1328440 (D.D.C. Mar. 28, 2024). Specifically, the court held that Castillo failed to allege either the October 13 or the October 15 communication included a false statement:

> Plaintiff disagrees that he violated [Section 4 of] the Code of Conduct, but does not claim Defendants made a false statement by explaining that the violation was the reason for rescinding his membership. In fact, Plaintiff acknowledges that Defendants expelled Plaintiff from NAS on the grounds of sexual harassment allegations, which Plaintiff also admits would violate the Code of Conduct, if true.

*Id.* at *2 (cleaned up).

In *Castillo II*, the district court dismissed Castillo's defamation-by-implication claim without prejudice, giving the plaintiff one more chance to plead additional facts. *Id.* at *4. Ultimately, however, his Second Amended Complaint fared no

better. *See Castillo Butters v. NAS* (*Castillo III*), No. 22-cv-3054, 2024 WL 4957218 (D.D.C. Dec. 3, 2024). In *Castillo III*, the court dismissed that claim for want of factual allegations that "affirmatively suggest that Defendants intended or endorsed a defamatory inference." *Id.* at *2–3. The court also rejected Castillo's request, raised in his memorandum opposing the defendants' motion to dismiss, for further leave to amend. *Id.* at *4. Castillo appealed the final dismissals in *Castillo II* and *Castillo III*, and the appeals were consolidated.

## II.   Analysis

We review *de novo* the dismissal of a complaint for failure to state a claim. *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Our review of the district court's denial of a motion for leave to amend is for abuse of discretion. *Jibril v. Mayorkas*, 101 F.4th 857, 866 (D.C. Cir. 2024).

## A. The Defamation and False Light Invasion of Privacy Claims

Before the district court, the parties agreed that District of Columbia law applies. In order to plead a defamation claim under D.C. law, a plaintiff must allege:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special

harm or that its publication caused the plaintiff special harm.

*Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 624 (D.C. Cir. 2023) (quoting *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001)).

As for the false light invasion of privacy claim, the D.C. Court of Appeals has held that where a "plaintiff rests both his defamation and false light claims on the same allegations, as [the plaintiff] has done here, the claims will be analyzed in the same manner." *Blodgett v. Univ. Club*, 930 A.2d 210, 223 (D.C. 2007); *see also Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 273 (D.D.C. 2017) (quoting *Blodgett*, 930 A.2d at 223); *cf. Smith v. Clinton*, 886 F.3d 122, 129 (D.C. Cir. 2018) ("Because defamation and false light are so similar, a plaintiff may plead them as alternatives and a reviewing court must also satisfy itself that the statement does not arguably place the plaintiff in a highly offensive false light in addition to finding the statements are not capable of defamatory meaning" (cleaned up)). The district court followed this approach, *Castillo II*, at *1, as must we.

The defendants argue that Castillo failed to allege: (1) the defendants made a false statement and (2) the defendants acted with at least negligence. The district court did not reach the negligence issue because it agreed with the defendants' first argument. *Castillo II*, at *2. In so doing, the court relied chiefly upon *Ruifang Hu v. K4 Solutions, Inc.*, No. 18-cv-1240, 2020 WL 1189297 (D.D.C. Mar. 12, 2020). In that case, the plaintiff's supervisor had said that the plaintiff was terminated for sending "'illegal' emails." *Castillo II*, at *2 (quoting *Ruifang Hu*, at *11). The court held the plaintiff "failed to state a defamation claim . . . because [illegal emails were] indeed the reason for her termination, even though plaintiff disagreed that

the emails she sent were 'illegal' or justified her termination." *Id.* (citing *Ruifang Hu*, at \*2, \*4, \*11). Per the court, it was "insufficient to allege only that the defendant made a statement about a decision and the plaintiff disagrees with the underlying substance of that decision." *Id.*

Applying that principle to the case at hand, the district court determined Castillo did not allege "that either of Defendants' statements were false." *Id.* In the court's view, Castillo's allegation that he did not violate the Code of Conduct was insufficient. Instead, Castillo needed to allege that the defendants rescinded Castillo's membership for a reason unrelated to a Code of Conduct violation.

Castillo argues that the district court misconstrued the falsity element of a defamation claim: He pleaded a false statement by alleging that he did not violate the Code of Conduct, and the district court wrongfully considered that allegation immaterial. *Ruifang Hu* too, per Castillo, was wrongly decided because it conflated the "falsity of the employer's *reason*" with the "falsity of its statement characterizing its employee's *conduct* as illegal."

Castillo is correct. Simply put, the district court did not appreciate the nature of a two-layered statement. The Supreme Court has explained:

> [T]he issue of falsity relates to the *defamatory* facts implied by a statement. For instance, the statement, "I think Jones lied," may be provable as false on two levels. First, that the speaker really did not think Jones had lied but said it anyway, and second that Jones really had not lied. It is, of course, the second level of falsity which would ordinarily serve as the basis for a defamation action, though falsity at the first level may

> serve to establish malice where that is required for recovery.

*Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 n.7 (1990); *see also Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d 216, 223–24 (D.D.C. 2004) (applying *Milkovich* to the statement "Benic was fired from Reuters because he was a bad manager").

The district court considered only the first level, that is whether Castillo claimed the proffered reason for Castillo's membership rescission was false, which he did not. At the underlying second level, however, the question is whether Castillo violated the Code of Conduct. Because Castillo denied that he violated the Code of Conduct, he has effectively as well as expressly alleged that both the October 13 and October 15 statements were false.**

---

** The October 13 email does not identify Castillo; it states only that "an international NAS member's membership has been rescinded for violating the NAS Code of Conduct." Nevertheless, Castillo alleges McNutt did ultimately identify him as that international member. First Am. Compl. ¶ 14. Castillo's brief further explains that "[u]pon accessing the password-protected website [mentioned in the October 13 email], more details were available, which Castillo does not have, though upon information and belief, it tells NAS members that Castillo violated Section [4] of the NAS Code of Conduct." At this stage it is sufficient for us to conclude that the October 13 email plausibly referred to Castillo; it occurred four days after Castillo's membership rescission and two days before the public-facing announcement of that rescission on the NAS's website. *See Florio v. Gallaudet Univ.*, 119 F.4th 67, 73–74 (D.C. Cir. 2024) ("The referent of a particular statement is a question of fact. So at this stage of the litigation, we consider only whether [the plaintiff's] reading of [the defendant's] statement is plausible" (cleaned up)). Put otherwise, Castillo is entitled to discovery regarding the contents of the password-protected website mentioned in the October 13 email.

To be sure, not all false statements are actionable as defamation. "An allegedly defamatory remark must be more than unpleasant or offensive; [it] must make the plaintiff appear odious, infamous, or ridiculous." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) (cleaned up). In order for a defamation claim to proceed past a motion to dismiss for failure to state a claim, the allegedly false statement must be capable of a defamatory meaning: "It is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous." *Id.* (cleaned up).***

It is not clear whether the district court held the October 13 or October 15 statements were capable of a defamatory meaning. At one point, the court seemed to decide upon only the false statement ground. *See Castillo II*, at *2 ("Because the court concludes that Plaintiff failed to allege Defendants made a false statement, the court need not consider Defendants' arguments that Plaintiff failed to allege that Defendants acted negligently"). Later, however, the district court observed that some of the case law offered by the Plaintiff concerned "whether the challenged statements were capable of defamatory meaning — not whether plaintiffs pled that the statements were false." *Id.* After summarizing a D.C. Court of Appeals decision that a certain statement was capable of a defamatory meaning, the district court then wrote: "Here, by contrast, Defendants stated only that they rescinded Plaintiff's membership because he violated the Code of Conduct, which could have meant anything from harassment to bullying to

---

*** For a false light claim, the analogous threshold question of law is whether a "reasonable person could conclude that [the defendant's] statements put [the plaintiff] in a highly offensive false light." *Smith*, 886 F.3d at 129 (cleaned up).

discrimination to treating others with disrespect." *Id.* (cleaned up).

To the extent the district court held the October 13 and the October 15 statements are not capable of a defamatory meaning, we disagree. The October 15 statement that Castillo violated Section 4 of the Code of Conduct is capable of a defamatory meaning because Section 4 proscribes odious conduct, to wit, sexual harassment. That Section 4 encompasses some less serious conduct — such as "treating others with disrespect," *Castillo II*, at *2 — does not defeat the commonsense conclusion that the statement could be "reasonably understood in [a] defamatory sense," *Weyrich*, 235 F.3d at 627 (cleaned up). The October 13 statement may not have specified which section of the Code of Conduct Castillo supposedly violated, *see* First Am. Compl. ¶ 14, but considering that other sections of the Code likewise proscribe serious forms of ethical or scientific misconduct, that distinction is inconsequential. Moreover, members of the scientific community both inside and outside of the NAS would also likely understand that the NAS would not expel a member absent a serious transgression of the Code of Conduct. *See White v. Fraternal Ord. of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) ("Generally, a publication may convey a defamatory meaning if it tends to lower the plaintiff in the estimation of a substantial, respectable group" (cleaned up)). We hold both statements are capable of a defamatory meaning.

A final point on these claims: The parties briefed whether Castillo adequately alleged the defendants were negligent in publishing the allegedly defamatory statements. We do not reach this issue because the district court did not pass upon it. *See, e.g.*, *Lucas v. AFGE*, 151 F.4th 370, 378 n.3 (D.C. Cir. 2025). On remand, the district court should determine in the

first instance whether Castillo alleged facts that plausibly suggest negligence.

## B. The Defamation-by-Implication Claim

The district court also dismissed Castillo's claim of defamation by implication. Castillo alleged three impliedly defamatory statements: McNutt's October 13 communication to NAS members, the October 15 NAS public website announcement, and McNutt's comment for the *ScienceInsider* article. *Castillo III*, at *1. Having determined the first two communications include allegedly false statements actionable under a conventional defamation or false light claim, here we need assess only whether McNutt's comment to *ScienceInsider* is actionable as defamation by implication. Because we agree that Castillo failed to allege facts affirmatively suggesting the defendants "intended or endorsed a defamatory inference," *id.* at *3, we affirm the district court's dismissal of this claim.

### 1. The Plaintiff's arguments

Defamation by implication is "an area fraught with subtle complexities." *White*, 909 F.2d at 518. Courts have required "an especially rigorous showing where the expressed facts are literally true." *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596 (D.C. 2000) (cleaned up). This court has summarized the analysis as follows:

> [I]f a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn, the libel is not established. But if the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference, the

communication will be deemed capable of bearing that meaning.

*White*, 909 F.2d at 520 (emphases deleted). For example, an article that includes "suggestive juxtapositions, turns of phrase, or incendiary headlines" may indicate the author intended or endorsed a defamatory meaning. *Id.* at 526.

As to the particular language, recall that McNutt, in the *ScienceInsider* article, is quoted as saying "members need to be role models not only in what they have achieved, but also in setting the highest standards for professional conduct." Sec. Am. Compl. Ex. 4 at 3. That statement alone provides no indication that McNutt intended or endorsed a defamatory implication. As the defendants argue, any possible defamatory inference necessarily arises from other parts of the *ScienceInsider* article, for which neither the NAS nor McNutt is responsible.[†]

---

[†] The *ScienceInsider* article presents the quotation as follows: "NAS President Marcia McNutt says the removals should convey that '[NAS] members need to be role models not only in what they have achieved, but also in setting the highest standards for professional conduct.'" Sec. Am. Compl. Ex. 4 at 3. The partial dissent (at pp. 5–6) claims we ignore the beginning of the statement — "the removals should convey that" — which is not a part of the direct quotation of McNutt. Perhaps for that reason, those words appear nowhere in the complaint, which repeatedly indicates it is only the direct quotation of McNutt that Castillo alleges is impliedly defamatory. *See* Sec. Am. Compl. ¶¶ 35, 59, 63. That is, the "complaint makes quite clear which text [Castillo] regards as [defamatory] . . . and why he regards it as [defamatory]." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). Particularly given the complexities presented when an allegedly defamatory statement is embedded in a third-party publication, we evaluate, "much as [we] did in *Trudeau*, . . . whether Plaintiff's specific theory of defamation is plausible." *Libre by Nexus*

13

Castillo's claim of defamation by implication also lacks any supporting factual allegations about "the particular manner . . . in which the true facts [were] conveyed." *White*, 909 F.2d at 520. The allegation that "McNutt encouraged and fueled the production of the article by providing the statements quoted" is conclusory; the allegation that the NAS and McNutt failed to "correct the implication that [they] indeed revoked Castillo's membership due to sexual harassment" charges is a negative inference, not affirmative evidence that they intended or endorsed a defamatory inference. Sec. Am. Compl. ¶¶ 33, 62. In sum, the Second Amended Complaint contains no allegation that, when viewed most favorably to Castillo, renders plausible his claim of defamation by implication.

The cases Castillo offers to the contrary are not helpful to his cause. In *Fells v. Service Employees International Union*, the SEIU had launched an internal investigation in response to accusations of sexual misconduct against its Executive Vice President. 281 A.3d 572, 577–78 (D.C. 2022). After this investigation and the EVP's resignation, another high-ranking SEIU official, Kendall Fells, "resigned, seemingly under threat of termination" for reasons unrelated to sexual misconduct. *Id.* "The SEIU statement at issue provided that Fells' termination was *the culmination of this stage of the investigation*, which brought to light the serious problems related to abusive behavior towards staff, *predominantly female staff*." *Id.* at 586 (cleaned up). The core of Fells's defamation claim was that the statement, although not literally stating that Fells was forced to resign for sexual misconduct, implied as much.

The D.C. Court of Appeals permitted Fells's claim of implied defamation to proceed past a motion to dismiss

*v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 156 (D.D.C. 2018); *see also id.* ("Plaintiff advances a precise theory of defamation in its pleading. It identifies only a single . . . defamatory statement in the Article").

because the SEIU statement included two problematic juxtapositions. *Id.* at 586–87. Namely, SEIU's specific mention of behavior towards "predominantly female staff" and SEIU's "tethering [of Fells's] departure to the same internal investigation that led to [the EVP's] ouster days earlier" provided affirmative evidence such that a jury could find SEIU intended or endorsed the inference that Fells was fired for sexual misconduct. *Id.* at 586. Here, in contrast, McNutt's statement does not include a "problematic juxtaposition" or any other contextual evidence suggesting that she intended or endorsed a defamatory inference.

Nor do the statements at issue in *Clampitt v. American University* resemble McNutt's statement. 957 A.2d 23 (D.C. 2008). In that case, the university had fired the plaintiff, who was the Executive Director and General Manager of WAMU, a radio station owned by the university, after reports of financial mismanagement at the station. *Id.* at 26–28. Upon the plaintiff's termination, a university spokesperson stated that "Clampitt was relieved of her duties . . . after the *Washington Post* exposed a financial deficit and morale problems," and the university president said the firing "was based on several factors, including the continuing pattern of deficits." *Id.* at 41. The university president, however, "had specifically approved Clampitt's financial and budgetary recommendations and thus knew or should have known that the allegations or implied accusations of financial mismanagement were false and without foundation." *Id.* at 39. The D.C. Court of Appeals held the statements were capable of defamatory meaning. *Id.* at 42. Because the statements specifically mentioned WAMU's previously reported deficit in connection with Clampitt's firing, Clampitt raised a jury question regarding whether the university defamed her by implying financial mismanagement was partly the reason for her termination. *See id.* at 41.

Here, however, the direct quotation of McNutt refers only to NAS members as a group, and it makes no mention of sexual harassment or any other particular conduct. Unlike in *Clampitt* and in *Fells*, the degree of generality with which McNutt spoke belies any notion she intended or endorsed a defamatory implication. To plead a plausible claim of defamation by implication under D.C. law, a plaintiff must "allege facts showing that . . . 'the particular manner or language in which the true facts are conveyed' supplies 'additional, affirmative evidence suggesting'" such intent or endorsement. *Nunes v. WP Co. LLC*, No. 20-7121, 2022 WL 997826, at *3 (D.C. Cir. Apr. 1, 2022) (quoting *White*, 909 F.2d at 520); *see also Abbas v. Foreign Pol'y Grp.*, 783 F.3d 1328, 1339 (D.C. Cir. 2015) (Kavanaugh, J.) ("[T]o make out a defamation by implication claim even in cases involving affirmative statements, D.C. law requires an 'especially rigorous showing'") (quoting *Guilford*, 760 A.2d at 596). Because Castillo has not done so, the district court's dismissal of Castillo's claim of defamation by implication in the Second Amended Complaint must be affirmed.

## 2. The partial dissent

Our partially dissenting colleague (at p. 1) would permit Castillo's claim of implied defamation to go forward on the ground that McNutt's statement must be viewed in context and "the relevant 'context' . . . is the article itself." To be sure, if a defendant writes an article containing an allegedly defamatory statement, then the entire article is the relevant context. *See, e.g.*, *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 314 (D.C. 2006). In this case, however, the author is *ScienceInsider*, which is not a defendant, and the defendants are not responsible for the content of the article beyond the statements they made. *See Guilford*, 760 A.2d at 584 n.2 ("All parties agree that Wilner did not select and is not responsible

for the title of the article, which was apparently chosen by the *Journal of Commerce*, which is not a defendant in this case"); *White*, 909 F.2d at 520 ("We emphasize that the tortious element is provided by the affirmative conduct of the author or broadcaster").

This is not to say a third-party statement may never be relevant to the analysis of a defamation claim. *Clampitt* acknowledged that a third-party news article may provide relevant context insofar as, after its publication, a defendant impliedly adopts the allegations in the article. In that case, the employer terminated the employee "in the wake of" a defamatory article concerning the employee, and the employer subsequently made statements connecting the termination to the content of that article. *See* 957 A.2d at 41–42; *see also id.* at 27–28 (recounting timeline of events). That court's theory of implied adoption is inapplicable here, where the quotation of McNutt appeared contemporaneously with and in the very article that the partial dissent suggests (at pp. 1–2) she impliedly adopted, and where there is no indication that McNutt knew the rest of the content of the article when she made her statement. To say that an individual who provides a nondefamatory quotation for an article is at risk of impliedly adopting the content of that article seems a dangerous precedent and cannot be the law.

The partial dissent (at pp. 3–4) also treats a spokesperson for the NAS having confirmed Castillo's ejection as evidence that the NAS adopted the allegations in the article. A statement simply confirming the fact of Castillo's ejection — and not the reason for it — provides no affirmative evidence suggesting the speaker intended or endorsed a defamatory meaning. Indeed, D.C. law is clear that "the mere announcement of [a] firing cannot support a claim of defamation by innuendo." *Howard v. Fed. Express Corp.*, 316 F. Supp. 3d 234, 244 (D.D.C. 2018).

This is because "[c]ourts in the District refuse, as a matter of law, to find defamatory meaning where the claim of defamation is based on the interpretation third parties place upon the termination of an at-will employee." *LeFande v. District of Columbia*, 864 F. Supp. 2d 44, 52 (D.D.C. 2012) (citing *Clampitt*, 957 A.2d at 40–41). We see no reason to treat a statement confirming the rescission of Castillo's membership any differently.

Finally, contrary to the partial dissent (at p. 7 n.3), we are not applying a heightened pleading standard to this claim; we are simply assessing whether Castillo has plausibly alleged a defamation-by-implication claim under D.C. law. We do not read the Supreme Court's recent decision in *Berk v. Choy*, 607 U.S. ___, 146 S. Ct. 546 (2026), as casting doubt on the notion that "the plausibility standard operates in conjunction with the substantive law of defamation," which is inherently a matter of local law. *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012).[††]

## C. Request for Leave to Amend

In his memorandum in opposition to the defendants' motion to dismiss his Second Amended Complaint, Castillo requested leave to amend his claim of defamation by implication and to file a third amended complaint. Castillo claimed to have "further facts, not alleged in his Second Amended Complaint, that would strengthen his defamation by implication argument, [so that] an effort to amend his

---

[††] In any event, for "a panel to reconsider a prior decision of this court in favor of a new Supreme Court precedent, the Court's intervening decision must effectively overrule, *i.e.*, eviscerate, the law of our circuit." *Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023) (cleaned up). We do not think *Berk* eviscerated *Nunes*'s articulation of what constitutes a plausible implied defamation claim under D.C. law. *See Nunes*, at *3.

complaint would not be futile." The district court denied the request, reasoning that "leave to amend is properly denied when the plaintiff was aware of the information underlying the proposed amendment long before moving for leave to amend the complaint." *Castillo III*, at \*4 (quoting *Onyewuchi v. Gonzalez*, 267 F.R.D. 417, 420 (D.D.C. 2010)).

Setting aside any question whether Castillo properly moved for leave to amend, *see United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("[A] bare request in an opposition to a motion to dismiss — without any indication of the particular grounds on which amendment is sought — does not constitute a motion within the contemplation of Rule 15(a)"), the district court plainly did not abuse its discretion in denying the request. Castillo had three opportunities to perfect his claim of defamation by implication. He neither explains why his claimed "further facts" were not included in an earlier pleading, *see Onyewuchi*, 267 F.R.D. at 420, nor provides any detail as to how those facts would strengthen his claim, *see Martin-Baker Aircraft Co.*, 389 F.3d at 1259. Even the permissive standard for granting leave under Federal Rule of Civil Procedure 15(a)(2), therefore, cannot save Castillo's defamation-by-implication claim.

## III. Conclusion

For the foregoing reasons, we affirm the district court's dismissal of the claim of defamation by implication raised in the Second Amended Complaint and reverse the district court's dismissal of the claims of defamation and false light invasion of privacy raised in the First Amended Complaint. The case is remanded to the district court for further proceedings.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge,* concurring in part and dissenting in part: I join my colleagues in holding that Castillo has stated a plausible defamation claim against the National Academy of Sciences (NAS) and NAS President Marcia McNutt based on their public statements that Castillo was expelled from the organization for violating the NAS Code of Conduct. But the majority is mistaken to hold that the defendants' separate statements in the *ScienceInsider* article do not give rise to a claim of defamation by implication under D.C. law.

"A defamation by implication stems not from what is literally stated, but from what is implied." *White v. Fraternal Ord. of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990). At the motion-to-dismiss stage, we must ask whether it is plausible that the defendant's statements, "viewed in [their] entire context," "intend[ed] or endorse[d]" an inference about the plaintiff, *id.* at 520, that is "capable of bearing a defamatory meaning," *id.* at 519. And because Castillo's implied-defamation claim arises from NAS's and McNutt's statements in the *ScienceInsider* article, the relevant "context" for evaluating those statements is the article itself.

The majority concludes that none of "the content of the [*ScienceInsider*] article beyond the [defendants'] statements" is relevant because the article was written by a third party. Maj. Op. at 15. But the defamatory content of a third-party news article is absolutely relevant in an implied defamation case to the extent the defendant "impliedly adopt[s]" the "stigmatizing allegations contained in [the] news[] article." *Clampitt v. Am. Univ.*, 957 A.2d 23, 41 (D.C. 2008). In *Clampitt*, the defendant "publicly appear[ed] to adopt the allegations of financial mismanagement in . . . [a] *Washington Post* article" about the plaintiff. *Id.* at 41. It did not matter that the *Washington Post* was not a named defendant; the content of the article was plainly relevant context. *Id.* at 40 ("[C]oncluding that the [*Washington Post*] article . . . asserting that under Clampitt's

watch, WAMU had been 'awash' with 'large operating deficits,' . . . is capable of defamatory meaning.").

My colleagues attempt to distinguish *Clampitt* on a most parsimonious ground. They conclude the *Clampitt* Court's analysis of the news article is "inapplicable" here because the defendant in *Clampitt* made its statements several days after the article's publication, whereas McNutt's and NAS's statements "appeared contemporaneously with and in the very article" Castillo reads as defamatory. Maj. Op. at 16. Respectfully, that assertion makes little sense. The majority evidently reads *Clampitt* to hold that a defamatory article is less relevant the closer in time it is to the defendants' statements—and not relevant at all if the statements and the article are published together. But that turns *Clampitt*'s reasoning on its head. *Clampitt* concluded that commenting on an allegedly defamatory article "in the immediate wake" of its release is sufficient to make the article relevant. 957 A.2d at 40. In my view, the principle applies with even greater force when a defendant volunteers his comments in the article itself. That NAS and McNutt willingly gave their statements to *ScienceInsider* provides more reason, not less, to look to the content of the offending article for necessary context.[1]

As for the article, *ScienceInsider* published its piece the same day that NAS publicly announced it had expelled Castillo for violating Section 4 of its Code of Conduct that prohibits, among other things, sexual harassment. The *ScienceInsider* article recounted at length the sexual harassment allegations lodged against Castillo by his former student, Marcela Poirier,

---

[1] The majority even suggests that applying *Clampitt* here would be "dangerous." Maj. Op. at 16. I do not see any danger in considering the full content of the *ScienceInsider* article—an article that NAS and McNutt willingly contributed to—in order to give their statements context.

the complaint Poirier lodged with NAS and the subsequent "[s]exual harassment investigation [that] triggered [Castillo's] ejection" from NAS. J.A. 57. The article stated that Castillo's ouster from NAS "mark[ed] the third time in 5 months that the prestigious academy has ejected a member for sexual harassment." *Id.* "The ejection," the article continued, "was confirmed by [an] NAS spokesperson." *Id.* And after summarizing the earlier sexual harassment cases—one involving an astronomer and the other an evolutionary biologist—the article quoted McNutt with the following statement: "NAS President Marcia McNutt says the removals should convey that '[NAS] members need to be role models not only in what they have achieved, but also in setting the highest standards for professional conduct.'" *Id.* at 58 (brackets in original).

The majority does not dispute that the *ScienceInsider* article was "capable of defamatory meaning." *Clampitt*, 957 A.2d at 39. "Its very title indicated" that NAS revoked Castillo's membership "because of sexual misconduct." *Fells v. Serv. Emps. Int'l Union*, 281 A.3d 572, 586 n.9 (D.C. 2022); *see* J.A. 57 ("Leading Peruvian archaeologist ousted by U.S. Academy of Sciences[:] Sexual harassment investigation triggered ejection of Luis Jaime Castillo Butters."). And the body of the article made the connection explicit: Castillo's "ouster . . . marks the third time in 5 months that the [NAS] has ejected a member *for sexual harassment*." J.A. 57 (emphasis added). The sole question, then, is whether it is plausible at this stage to conclude that NAS's and McNutt's statements in the article "intend[ed] or endorse[d]" that defamatory inference. *White*, 909 F.2d at 520. With no difficulty, I conclude that it is.

After it states that Castillo was "ejected . . . for sexual harassment," the article asserts in the next sentence that "[t]he

4

ejection was confirmed by [an] NAS spokesperson." J.A. 57. A reader could easily infer that the NAS spokesperson had "confirmed" not just the fact that NAS had expelled Castillo, but also the article's asserted reason for Castillo's expulsion— "for sexual harassment." *Id.* The endorsement would be all the plainer to readers because they also had access to NAS's public announcement, released the same day, that stated the official ground for Castillo's ejection was a violation of Section 4 of the NAS Code of Conduct, which lists sexual harassment as a basis for ejection. The spokesperson's statement is therefore actionable under the "adoption theory" of implied defamation recognized in *Clampitt*. 957 A.2d at 41 (quoting *Warren v. Junction City*, 176 F. Supp. 2d 1118, 1131 (D. Kan. 2001)). As was the case in *Clampitt*, NAS "publicly appear[ed] to adopt the [defamatory] allegations" in the *ScienceInsider* article, *id.*, when it "confirmed" through its spokesperson that NAS had removed Castillo "for sexual harassment," J.A. 57.[2]

The inference is even stronger that NAS endorsed the *ScienceInsider* article's claim that Castillo was expelled for sexual harassment because NAS was the all-but-certain source of that information. *Contrast with Clampitt*, 957 A.2d at 39–42 (no indication of collaboration between news organization and defendant). It is hardly a coincidence that NAS announced to the public that it had expelled Castillo the very same day *ScienceInsider* published its detailed article linking the decision to the sexual harassment allegations against Castillo.

_____

[2] My colleagues conclude that a reader would interpret the NAS spokesperson's statement as "simply confirming the fact of Castillo's ejection[,] . . . not the reasons for it." Maj. Op. at 15. But "at this stage of the litigation, we consider only whether the [broader] reading of [McNutt's] statement is plausible." *Florio v. Gallaudet Univ.*, 119 F.4th 67, 73–74 (D.C. Cir. 2024). I have explained that it is.

5

The strategic timing strongly suggests NAS coordinated with *ScienceInsider* in advance of the article's release—an inference all the more plausible because the article's core claims that Castillo was expelled (and that it was "for sexual harassment") were apparently not yet public knowledge. J.A. 57. Before the article's release, NAS had communicated Castillo's departure only to its membership base and the announcement did not name Castillo, the Code of Conduct provision that he purportedly violated or otherwise state that his ejection was related to sexual misconduct. To write its article, in other words, a reputable news organization like *ScienceInsider* would have needed a direct source with insider knowledge of the specific conduct that led to Castillo's expulsion. The most obvious source for that intel was NAS, the decisionmaker behind Castillo's removal.

And then there is McNutt's statement in the article. After summarizing Castillo's ouster and other recent cases in which NAS members were purportedly expelled for sexual harassment, the article recites McNutt as "say[ing] the removals" (plural) "should convey that '[NAS] members need to be role models . . . in setting the highest standards for professional conduct.'" J.A. 58. By grouping Castillo with the members NAS had dismissed for sexual misconduct, McNutt's statement implied that Castillo had been ousted for the same reason. Her statement thus invited the same type of "problematic juxtaposition" held to be defamatory in *Fells*. 281 A.3d at 586 (defendant's statement "tethering [Fells's] departure to the same internal investigation that led to [another individual's] ouster days earlier" implied "that [Fells], too, had engaged in sexual misconduct").

My colleagues do not dispute the defamatory import of McNutt's full statement. Rather, they conclude that in deciding whether her statement was actionable only her "direct

quotation" in the article is relevant—because that is the only part of her statement that Castillo referenced in his complaint. Maj. Op. at 12, 15. And it is only after stripping McNutt's statement down to her bare quote that "[NAS] members need to be role models . . . in setting the highest standards for professional conduct," J.A. 58, that the majority concludes "McNutt's statement does not include a 'problematic juxtaposition'" at all, Maj. Op. at 13.

I believe the majority's holding that McNutt's full statement cannot be considered as part of Castillo's pleading is flatly incorrect. "Federal Rule of Civil Procedure 10(c) permits a plaintiff to attach an exhibit to the complaint, rendering the exhibit 'part of the pleading for all purposes.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). In support of his implied defamation claim, Castillo attached to the Second Amended Complaint the entire *ScienceInsider* article, which included McNutt's full statement. The statement—not just the quoted part of it—is thus part of Castillo's pleading for the purpose of deciding whether he has stated a claim for relief. Fed. R. Civ. P. 10(c); *see Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) ("[B]ecause [Trudeau] has attached all of the relevant text to the complaint, it is appropriate for a court to examine that material in ruling under Rule 12(b)(6)."). The majority's failure to consider McNutt's full statement is also inconsistent. It agrees we should "consider the [NAS] October 13 communication in full" to weigh Castillo's express defamation claim, Maj. Op. at 3 n.1—although Castillo failed to attach the communication as an exhibit to the operative complaint—but declines to consider the McNutt statement "in full" even though Castillo *did* include it as an exhibit to his complaint.

Nor does it matter that McNutt's full statement did not identify Castillo by name or explicitly "mention . . . sexual

harassment." Maj. Op. at 15. Implied defamation does not require the defendant to "expressly state [the plaintiff] was terminated for sexual misconduct." *Fells*, 281 A.3d at 586. Again, McNutt was commenting on "the removals" of Castillo and other NAS members accused of professional misconduct that was sexual in nature, J.A. 58, and the entire article, after all, was about Castillo and how he had been expelled "for sexual harassment," *id.* at 57. "[V]iewed in its entire context," McNutt's statement plainly referred to Castillo and the circumstances of his removal. *White*, 909 F.2d at 520.[3]

Some implied-defamation cases are "fraught with subtle complexities." *White*, 909 F.2d at 518. This one is not. The same day NAS and McNutt publicly announced the decision to rescind Castillo's membership for violating the section in NAS's Code of Conduct that prohibits sexual harassment, *ScienceInsider* published NAS's and McNutt's statements "confirm[ing]" the reason NAS expelled Castillo. J.A. 57. Castillo has therefore stated a plausible claim of defamation by implication and I believe the majority errs by not allowing it to go forward.

---

[3] My colleagues also suggest that Castillo's implied defamation claim is subject to an "especially rigorous" pleading standard under D.C. case law because, in their view, McNutt's statement "expressed facts [that] are literally true." Maj. Op. at 11 (quoting *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596 (D.C. 2000)). But we do not defer to D.C.'s procedural rules regarding "the information a plaintiff must present about the merits of his claim at the outset of litigation." *Berk v. Choy*, 607 U.S. ----, 146 S. Ct. 546, 553 (2026). And insofar as the majority adopts a heightened pleading standard of its own, the Supreme Court has "consistently rejected" attempts "to require more information for certain kinds of claims" that the Federal Rules of Civil Procedure do not otherwise "single out . . . for special treatment." *Id.*; *see, e.g.*, Fed. R. Civ. P. 9(b).